Bissell, J.,
delivered the opinion of the court.
No case has been presented to this court since its organization beset with more difficulties, surrounded with greater perplexities, and about which I have had graver doubts respecting its proper solution. Aside from the infinite trouble to extract from the various adjudications on this and similar questions the rule which is recognized by the weight of authority, and to discover the right principle which ought *465 to control the courts in such cases, we are further embarrassed by the consideration that in the end our decision can only be taken as expressive of our conclusions, because the final power to adjudicate all constitutional questions rests with the supreme court, to which this case will probably ultimately go. ,
The error alleged to inhere in the record was committed by the entry of judgment of the lower court quashing a writ of attachment theretofore issued and levied. The writ was rightfully sued out on a sufficient ground as the statute then existed, was'untraversed, and should have been supported by the judgment, if the court erred in its conclusions respecting the effect of the repeal of the statute under which it was issued. Prior to 1895, whoever commenced a suit had the right to file an affidavit alleging any one of thirteen several causes of attachment. If a statutory ground was stated and the proceedings were otherwise regular, this entitled him to a writ under which the defendant’s property might be impounded to await the recovery of a judgment. If the affidavit was not traversed, or, if traversed, successfully maintained, the judgment must sustain the attachment, and the property could be sold to satisfy the plaintiff’s claim. Among these various grounds was one which provided that the writ might issue if the suit was begun on an overdue promisso^r note, or on a book account. In the present case, the suit was brought on a promissory note past due. The affidavit was not traversed, because the execution and delivery of the note was conceded and admitted not to have been paid when it fell due; and there being no controversy over the plaintiff’s cause of action, he was entitled to a judgment sustaining his writ unless he was deprived of the right by the act of the legislature which is' under consideration. In 1895, the act governing attachments which was contained in the code of procedure was amended, and amended in only one particular;—that was the striking out or omission of the thirteenth ground. Under the provision of our constitution, acts which are amended are amended by a reenactment of the original *466 act in the form into which it falls by the amendment. The act therefore took the form of a reenactment of the original statute, with the omission of that clause. This repeal or amendatory act became operative subsequent to the commencement of the suit, the issue and levy of the writ, and before the entry of judgment. Thereupon the defendant moved to quash the writ, because, as the statute stood at the time the motion was made and judgment entered, the plaintiff was without the statutory right to procure a writ on the ground stated, have it levied and impound the defendant’s property. Prior to this time, an act had been passed by the legislature of -1891 (Session Laws of 1891, page 866), which substantially provided that “the repeal, revision, amendment or consolidation of any statute or section of a statute shall not have the effect to release, extinguish, alter, modify or change in whole or in part any penalty, forfeiture or liability, either civil or criminal, which shall have been incurred under such statute,” unless the repealing act should so expressly provide. The act likewise provided that “ the statute or the part of it which might be repealed or amended should be treated and held as still remaining in force for the purposes of sustaining anjr and all actions, suits, proceedings or prosecutions, as well as to sustain anjr judgment or order which could or might be entered in the suits or proceedings.” The court regarded the amended act of 1895 as operative to defeat the plaintiff’s right to the writ, held that the writ fell with the repeal of' the statute, that the plaintiff was no longer entitled to a judgment sustaining his attachment, dissolved it, and entered judgment accordingly. After final judgment, the plaintiff prosecuted error, assigning the dissolution of the attachment as the matter by which he was prejudiced.
' In limited governments like those of our several states, the power of the legislature is controlled by written constitutions, and all laws which they attempt to enact must be subservient to the limitations imposed on their authority, and all laws are subject to whatever restrictions are placed on this power by the conditions which the people themselves have *467 imposed by their organic law. While the courts have always recognized their power and authority to examine legislative acts, determine the force and effect of particular constitutional provisions as applied either to their interpretation or to the power of the legislature to pass them, and have never hesitated to declare them void when in conflict with the constitution which the people have adopted, yet they have always hesitated to declare acts invalid and unconstitutional except in plain eases, about which in the end they are free-from doubt. The discussion is approached with caution, after great deliberation and much study. We recognize the force of this general rule, and after, unusual consideration we have reached the result with a great deal of reluctance.
. The plaintiff in error invokes two familiar constitutional principles in support of his position. The first has been before the courts of most states, and often before the supreme court of the United States, has been repeatedly construed, and its general scope and effect has been largely considered and may be deemed tolerably well settled. This provision is the one common to the constitution of all states, as well as the constitution of our common country, that states may pass no laws which impair the obligations of contracts. While the limitation is well settled -and the question has been considered in many cases, no line has yet been drawn, no definition laid down, no exact and formal statement incorporated into any decision by which the matter may be settled. Each case seems to be only determinable and only to have been determined on its special circumstances, and only a few general principles have been laid down by which courts can be guided in the decision of the special case submitted. We are quite unable to discover that either the enactment or repeal of a statute giving the plaintiff a right to sue out a writ of attachment in aid of his suit is in any manner obnoxious to the constitutional provision which forbids the legislature to pass a law impairing the obligations of contracts. The attachment law can in no sense be said to be a part of the contract. The subject-matter of the action is a promissory note. *468 This is simply a promise on the part of the debtor to pay a specific sum of money at a place named, at a certain time, and with certain interest. The suit is begun to enforce that contract and that promise. The right to sue out a writ and levy on the debtor’s property is neither part nor parcel of the contract, nor does it form any part of the engagement into which the parties entered, nor does the repeal of the act permitting it affect any substantial and actual remedy which the payee has to enforce his right of action, which is the right to sue, put the demand in judgment, and collect it by execution. The principal consideration which seems to control the courts in their inquiry whether a particular act is obnoxious to this constitutional provision is whether the principal promise made by the debtor has been impaired, and whether the act which has been repealed can legitimately be taken to enter into or to form a part of the agreement. If it does not so enter into the agreement, the courts inquire whether it is so inseparably connected with it that it must be adjudged the destruction of the one will amount to an impairment of the other. It may be unanswerably stated that the right to the writ neither entered into nor formed a part of the original promise to pay. It was not a constituent of the consideration ; there was no aggregatio mentium. The parties did not contract with reference to it, nor can it in any way be said that they agreed on the faith and strength of it. It was not recited in the note. When it can be seen that the matter was not within the minds of the parties at the time they contracted, and that their assent cannot be presumed, it can on no legal principle of which we are advised be adjudged to enter into and form a part of the contract itself. There are many cases adjudging it not within the power of the legislature to give to the mortgagor, the grantee in a trust deed, and possibly the lienee under a lien statute, a right of redemption beyond the time fixed by law when the mortgage was executed, the deed made, or the lien filed. These cases all proceed on the theory that such acts take from the mortgagor or the grantee, or the lienee, some part or portion of an *469 estate which he held by virtue of the contract and gave to the debtor part of that which belonged to the other party. Terry v. Anderson, 95 U. S. 628; Railroad Co. v. Tennessee, 101 U. S. 337; Antoni v. Greenhow, 107 U. S. 769; Von Hoffman v. City of Quincy, 4 Wall. 535; Walker v. Whitehead, 16 Wall. 314; Louisiana v. Mayor of New Orleans, 109 U. S. 285; Morley v. Lake Shore Railway Co., 146 U. S. 162; Freeland v. Williams, 131 U. S. 405; Watson v. N. Y. Central Ry. Co., 47 N. Y. 157; Conn. Mut. Life Ins. Co. v. Cushman, 108 U. S. 51; Railroad Co. v. Grant, 98 U. S. 398; Gurnee v. Patrick County, 137 U. S. 141.
The same principle has been recognized by the supreme court of this state- in several well-considered cases. Harrison v. Smith, 2 Colo. 625; Gregory v. German Bank of Denver, 3 Colo. 332; Hirschburg v. The People, 6 Colo. 145.
Tested by these general principles we must conclude that the repeal of the act, even though it be taken to affect attachments already levied, is not invalid because in conflict with this particular provision of the constitution.
The other provision, which is invoked in support of the position that the repealing act may not be taken to affect rights already issued, is section 11, of article 2, of our constitution, containing the bill of rights. It provides “that no * * * law * * * retrospective in its operation * * * shall be passed by the general assembly.” This provision is not common to the constitution of many states, is not found in that of the United States, and therefore has been less frequently subject to adjudication and construction, and, as seems somewhat remarkable, has never but once been very largely discussed by the supreme court of the state. It was considered by the present learned chief justice of the supreme court in a late case, which will be cited, but the decision was put on a basis which would be impregnable, even though the first provision respecting the impairment of the obligation of contracts had alone been under consideration. While we derive some aid and benefit from their consideration, in neither of these cases do we find a discussion or decision which can *470 be taken as conclusive of the present inquiry. Denver, South Park & Pacific Ry. v. Woodward, 4 Colo. 162; Fisher v. Hervey, 6 Colo. 16; Brown et al. v. Challis, 23 Colo. 145.
In the first case the legislature passed an act giving certain parties the right of action in case of personal injury. Plaintiff recovered a judgment, and by appeal the case went to the supreme court, and while there pending the act Under which the plaintiff sued was repealed. The court held that the legislature was without the power to pass an act which would operate retrospectively and destroy a cause of action which had accrued to the plaintiff and had gone to judgment before the repeal. While the general scope and effect of this constitutional provision was considered, and the court held the legislature powerless to deprive the plaintiff of a cause of action which he had when he brought the suit and got judgment, and any act which attempted to do it was obnoxious to this provision, it was evidently on the very plain principle that the constitution inhibited the legislature to pass acts which should destroy vested rights of action, and leave the plaintiff entirely without a remedy. The same principle was involved in the case of Brown v. Challis, and is in reality the basis on which the court put its decision. All courts which have considered the force and effect of that provision which forbids legislatures to pass laws which impair the obligations of contracts have held any act unconstitutional which deprived the plaintiff of his cause of action, or of a remedy for its enforcement, so long as the remedy was so inseparably connected with the cause of action that to take away the remedy would be to destroy the right. Any law which deprives a party of a vested right of action or defense has been universally held unconstitutional and void, whether the one or the other constitutional provision be under consideration. It therefore clearly appears we are without any authoritative decision in this state by which the matter may be settled. The question still remains whether the repeal of the act prior to judgment deprived the plaintiff of a right which he had acquired, which right was of the sort the legislature was powerless to affect *471 or destroy. Matters of remedy are always the subject of legislative control. So far as any particular statute concerns only the remedy, it is completely subject to legislative change, unless there be such an intimate connection between the remedy and the right of action that to impair, defeat or encroach on the one, impairs, defeats and destroys the right conferred by the contract. Parties are adjudged to have no more rights or vested interests in particular remedies than they have in matters respecting which the legislature has seen fit not to act, so long as there is a sufficient remedy left which will secure to the suitor the right of action and the enforcement of the judgment which he may ultimately obtain. As was said by Chief Justice Shaw, in Springfield v. The Commissioners of Hampden, 6 Pick. 500 : “ There is no such thing as a vested right to a particular remedy.” This, however, does not dispose of the question ; it virtually assumes-as the basis of the proposition that which remains to be demonstrated, and that is whether the plaintiff, by the levy of his writ, acquired that which the legislature was powerless-to take away. The courts which have had this question under consideration have always held that where the law applied only to the remedy, yet, if practically and in effect it destrojmd any right which the plaintiff had acquired, or had a right to acquire, it should be taken to affect the substance of his cause of action, and could not be taken to operate retrospectively. The most satisfactory discussions of this question which we have been able to find are- in the New Hampshire decisions, in which state the constitution contains a provision like ours, save there is added the clause substantially that retrospective laws which are injurious, oppressive or unjust shall not be passed. It does not seem to us that the addition of these words in any wise enlarges the force or alters the construction which must be put upon it, or that any law, even though retrospective in its character, would be held to be violative of our general constitutional restriction, unless it was evident that the statute which was passed was injurious, oppressive or unjust in its effect. We may *472 therefore accept the decisions of that state, not only as illustrative of the proper construction to be put upon statutes which are attacked on this ground, but may adopt the reasons which they suggest as those upon which our decision is based. When we undertake to draw the distinction between right and remedy, we embark on a sea, and the compass of principle alone will enable us to pursue our journey with safety. It was very well said in Kent v. Gray, infra:
“There is much authoritj'- for holding, in general terms, that a right to have one’s controversies determined by existing rules of evidence is not a vested right; that rules of evidence pertain to the remedies which the state provides for its citizens; that, like other rules affecting the remedy, they must at all times be subject to modification by the legislature ; that changes affecting the remedy may lawfully be made applicable to existing causes of action; that the changes are not retrospective, because they are to be applied in future trials, and are not to affect previous trials. Cooley Const. Lim., 867. But general statements of this kind are to be taken with the broad qualification that the changes must not infringe the general principles of justice. Retrospective laws are unconstitutional and void, because they are injurious, oppressive and unjust. That is the plain and simple rule laid down in the bill of rights. And any generalization founded on the distinction between right and remedy is attended with some danger, because of the difficulty of drawing that distinction so accurately as not to impair the force of the constitutional prohibition. Undoubtedly, a remedy may be changed, in some sense, and to some extent, without affecting a right,—that is, there may be a change in the remedy that is not injurious, oppressive, and unjust: but it is equally clear that the remedy may be so changed as to affect a right injuriously, oppressively, and unjustly, within ■the meaning of the prohibition. A statute is not necessarily just and valid because it affects the remedy. The question is, mot whether it affects the remedy, but whether it affects the remedy in a certain sense, and the remedy only. This *473 point is forcibly illustrated in the dissenting opinion of Bell, C. J., in Rich v. Flanders, 39 N. H. 347, 348. If a statute, in terms made applicable to pending suits, should provide that no deed should be received in evidence unless the attesting witnesses were fifty years of age at the time of the trial, and if the retrospective character of such a statute were the only objection to its validity, it would not be made valid by the fact that it affected the remedy. It could not be applied to pending suits, or to deeds duly executed before its passage, because it would unjustly affect rights as well as remedies. Legal evidence of title could not be justly destroyed, however strongly the statute might profess to be exclusively aimed at'the remedy. The principles of justice, declared by the prohibition of retrospective laws, are not evaded by words, names, and pretences. And when we have merely ascertained that a statute affects the remedy in some sense or other, we have made very little progress in the inquiry whether it affects a right; that is, whether it is unjust on general principles. If a certain change can be made in the remedy, it is because it can be justly made; if a change cannot be made in the right, it is because it cannot be justly made.”
The learned judge well remarks that the statute is not of necessity to be adjudged without the inhibition because it affects only the remedy. The question still remains whether the destruction of the remedy has not injuriously affected substantial rights formerly possessed by the plaintiff. This may not be done. We prefer the term “substantial,” rather than “vested,” because the term “vested ” has a distinct and legal significance well understood by lawyers familiar with the law of real property, with regard to which only can that term be accurately and strictly used. Familiarly illustrative rights are those which the mortgagee acquires by virtue of his mortgage, those which the grantee has by his trust deed, and those which inure to the lienor on compliance with the statutes. Speaking in general terms, they are either, according to Mr. Fearne, “ an immediate, fixed right of present or *474 future enjoyment, or where the interest does not depend upon a period or an event that is uncertain,” or, as Chancellor Kent states it, “ where there is an immediate right of present enjoyment, or a present, fixed right of future enjoyment.” As it was put in Clark v. Clark, 10 N. H. 380, quoting only so much of it as clarifies our present idea: “ A law may be retrospective in its operation, if it affect an existing cause of action or an existing right of defense by taking away or abrogating a perfect existing right, although no suit or legal proceeding then exists.”
In the interpretation of the definition which has been given to the term “ vested rights ” in some of the New Hampshire cases, there can be no question concerning the accuracy of the term. A “ vested right,” as by them interpreted, is a right to do or possess certain things which the parties had already begun to exercise, which is either authorized by the statutes or to the exercise of which no obstacle exists in the laws which have been enacted. But wherever the statute takes away a right acquired under existing laws, or creates a new obligation, or imposes a new duty in respect to transactions already begun, the statute must be deemed retrospective. Pickering v. Pickering, 19 N. H. 389; Willard v. Harvey, 24 N. H. 344; Kennett’s Petition, 24 N. H. 139; Kent v. Gray, 53 N. H. 576; Rich v. Flanders, 39 N. H. 304; Colony v. Dublin, 32 N. H. 432; Haskel v. City of Burlington, 30 Iowa, 232; Simpson v. City Savings Bank, 56 N. H. 466; Rairden v. Holden, 15 Ohio St. 207; De Cordova v. City of Galveston, 4 Tex. 469; Palariet's Appeal, 67 Pa. St. 479.
It may be said that this discussion has in reality assumed that which ought to be substantiated in order to acquire a basis on which this construction can reasonably be put. The writ of attachment is said to be only a remedy provided by statute whereby the plaintiff may secure his debt if he ultimately be able to prove it and reduce it to judgment. There is a measure of truth in the contention, and I confess that originally I was of the opinion it was an unanswerable argu *475 ment that the writ of attachment was only a matter of remedy and might be destroyed and taken away by the legislature at will, and the plaintiff was not at liberty to complain. Maturer reflection, however, has convinced me that the right to a writ of attachment, when it accrued and was exercised while the statute was in force permitting it, gave to the attachment plaintiff a right which may be called either “ vested ” or “ substantial,” at pleasure, but nevertheless a right which could be neither taken away nor destroyed by the repeal of the statute under which it had been regularly acquired. This contention has been forced upon me as a result of an examination of the various authorities in this state regarding attachment liens, and the rights of attachment creditors, as well as by a consideration of the force and effect of the act' of 1891, which has been adverted to. Under our statutes an attachment plaintiff is in reality, and for many purposes, an incumbrancer. It is quite true the lien which he acquires is contingent rather than inchoate, and dependent not only upon a compliance with the statute which provides for its issue, but also upon the subsequent recovery of a judgment and proof of a cause of action on which he had a right to sue Avhen he commenced his action. In this sense, it is contingent ; in another, it is absolute, or becomes absolute, if the ground of it be not successfully traversed and the plaintiff ultimately succeeds. If the plaintiff recover judgment and his attachment be sustained, he acquires an absolute lien, which has existed from the time of .the levy of the process, relates back to that date, is enforcible as of that time, and to that extent, as against all intervening persons, Avhether purchasers, incumbrancers, or execution or attachment creditors. In other words, he has an absolute right to have sub-i jectedto his execution the property Avhich he has impounded, and its proceeds may be devoted to the liquidation of the debt as against all other persons who are subsequent in time in their rights, and however their rights may be acquired. It has even been held in this state that the giving of a forthcoming bond does not release the attachment, but that the property still *476 remains subject to the writ and the lien until the judgment is paid and satisfied. The lien has been adjudged good as against unrecorded deeds, as well as subsequent attaching creditors. Gates Iron Works v. Cohen, 7 Colo. App. 341; Emery v. Yount, 7 Colo. 107; Stevenson v. Palmer, 14 Colo. 565; Schneider v. Wallingford, 4 Colo. App. 150; Collins v. Burns, 16 Colo. 7; Williamson v. New Jersey Southern Ry. Co., 29 N. J. Eq. 311.
We are therefore of the opinion that the judgment should have sustained the attachment, because by the levy the plaintiff acquired an interest in the property which became definite, fixed, certain, and vested by the ultimate recovery. We are also of the opinion that although this constitutional provision may be taken as incorporated into and operative upon the amended statute, so that it is read as though containing a saving clause as to all pending suits and proceedings, we may justly hold the act of 1891 part and parcel of the amended statute. We properly have a right to assume that the legislature, in passing the repealing statute without a saving clause, had in view the terms, scope, and legal effect of a statute evidently passed to provide for just such contingencies. That act is in general terms; it aims at no specific statute; it is intended to embrace all statutes, both civil and criminal, and was evidently intended by the legislature to cover cases of this description, which, without intending to be offensively critical, we may justly say not infrequently happen. The statute is broad in its scope, ample in its terms, and without giving undue force to its language, and without the adoption of a strained construction, may be taken to be a part and parcel of this repealing or amended statute. If this is so, then the statute was amended and reenacted with this provision attached, and we must read that section relating to attachments as though it contained a provision that it should not be taken to extend to or affect any suits or proceedings already begun.
This question has been before the circuit court of appeals of the United States in a case decided at the present term *477 (The National Bank of Commerce of Kansas City v. John J. Reithmann et al.), and in that case it was adjudged the attachment did not fall by reason of the repeal, and the writ should not have been quashed, as was done in that particular case, but that the rights of the plaintiff, having been acquired by his writ, were unaffected by the repeal. That distinguished court seems to regard the case in the 4th Colorado, which has been referred to, as conclusive of the inquiry. The court, however, does not put its decision on that basis, and according to the result of our examination no such effect can rightfully be given to that opinion. We need not quarrel, however, with that court, because if they be right and we be wrong, our judgment must be correct, even though we have given wrong reasons for it, and whichever road we take, whether theirs or ours, we arrive at the same point. That court urges a very persuasive reason in support of their conclusion that the writ has been levied, the right acquired, and everything done essential to the perfection of that right, antecedent to the repeal of the statute. They construe the statute simply to mean that after the act went into effect it should no longer be a ground of attachment that the suit was brought on a promissory note. In the language of that decision : “ The act did not provide that writs lawfully issued upon that ground, while it was a lawful ground for attachment, should abate; or that acts done under such writs should be held void, or that liens obtained under them should lapse. Full effect is given to the statute by allowing to it prospective operation. The existing writ in this case, and the lien of such writ, were not affected by any of the terms of the statute. The stated cause upon which it was-issued, valid at the time, and effectual then to obtain a valid writ, was a thing of the past which had served its purpose at the proper time, and was no longer material, except to show that the writ was, when issued, lawfully issued.”
We have preferred, however, to put our decision on constitutional grounds as well as on these general considerations. This has been done to protect, so far as we could, the rights *478 of the present litigants, as well as to conserve the rights of other suitors whose interests may be affected by this opinion. Unless we are incorrectly informed, this matter has been before the various district courts of the state many times since the act of 1895 went into operation. We are likewise advised by the profession that the district courts have divided on the question, many judges holding one way, and many the other, which demonstrates to our mind that the question is a close one, of great perplexity and uncertainty, and on which courts might well differ, and support their conclusions with almost equally persuasive reasons. Our district courts are presided over by men of large experience and learning in the profession, and their opinions are entitled to great weight and respectful consideration, and while they differ on this question, we regard it as only just and proper that we should unhesitatingly and fully express our views, decide the constitutional question according to our best judgment, put our decision on that ground, that the parties to this suit as well as other litigants in the state may ultimately have the maturer and probably more satisfactory conclusion of the supreme court upon this question.
Believing that the court erred'in quashing the attachment, the judgment will be reversed.

jReversed.

Wilson, J., not sitting.