Wilson, P. J.
This was an agreed ease, prepared and submitted to the district court under the provisions of code section 278. The statement of facts upon which the controversy depends is brief, and we insert it entire.
“1. The Stockgrowers National Bank of Pueblo, on the 12th day of May, 1888, obtained a judgment in the district court of Pueblo county, Colorado, against G. M. Dameron and James C. Jones for the principal sum of $2,985.82, and costs of suit, which judgment remained thereafter in full force and effect and unreversed.
“2. On the 21st day of May, 1888, an execution issued thereon, which was satisfied in part by the sale of certain property belonging to the defendant, James C. Jones, on the 10th day of August, 1888, and thereafter there remained of said judgment, unsatisfied, the principal sum of $1,773.82, but no steps were thereafter taken to revive the said judgment.
“3. On March 9, 1899, the Stockgrowers National Bank aforesaid, sued out from the clerk’s office an alias execution for the purpose of collecting the amount of said judgment so remaining unsatisfied, and the said alias writs were placed in the hands of the sheriffs of Bent and Otero counties to execute, and *81 by tbe said sheriffs were levied on certain real and personal property situate in the counties aforesaid and belonging to the said James C. Jones.
‘ ‘ The question is, whether the alias writs of execution lawfully issued, and whether the judgment aforesaid remains as a basis for the said alias writs of execution, and could the same lawfully issue without a revivor of the said judgment.”
The court found that the alias writs of execution could lawfully issue, and judgment was rendered in favor of the defendant bank. From this plaintiffs áppeal.
It is conceded that at the time of the rendition of the judgment under consideration, the limitation on its life was twenty years, and that execution might issue at any time within such period. In 1891, however, the legislature amended section 1835 of the general statutes, being the first section of the chapter entitled “Judgments and Executions,” by re-enacting it in its entirety, with the amendments proposed. —Laws 1891, p. 246. The latter part of this amendatory statute reads as follows:
“And, provided, further, That execution may issue on such judgment to enforce the same at any time within twenty years from the entry thereof, but not afterwards, unless revived as provided by law; and from and after ten years from the entry of any final judgment, in any court of this state, the same shall be considered as satisfied in full, unless revived as provided -by law. The term real estate, in this section, shall be construed to include all interest of the defendant, or any person to his use held or claimed by virtue of any deed, bond, covenant or otherwise for a conveyance or as mortgagor of lands, in fee for life or for years.”
With the exception of the last five lines in this proviso, it will be seen that the matter is entirely new, *82 there not having been provided in the old section of which this was amendatory, any limit of time within which execution could issue, nor any time after, which the judgment should be deemed satisfied. It will also be seen at a glance that there is apparently an irreconcilable conflict in the terms of the proviso. At first it is specified that at any time within twenty years from the entry of the judgment, an execution may issue to enforce it; and immediately following, it is provided that unless revived as provided by law, the judgment shall be considered satisfied in full from and after ten years from the time of the entry. Plaintiffs base their contention upon the ten-year clause in this proviso, holding that more than ten years having passed from the entry of the judgment and prior to the issuance of the alias executions in controversy, the judgment must be deemed fully satisfied and discharged, and the executions must consequently be without any force or effect, having been issued to enforce a dead judgment. This presents the only issue in the case. The sole question to be determined is, Does this statute of 1891 apply to the judgment in question which was rendered prior to its passage? If so, what is the construction of this proviso which we have quoted, so far as it applies to the judgment and executions in controversy? Does the twenty-year clause or the ten-year clause apply?
If the ten-year clause be sustained, and be held applicable to judgments rendered prior to the passage of the act, that the statute would in such case and to such extent be retroactive is self-evident. This alone, however, would not defeat it, because retroactive legislation within certain limits may be sustained when it is remedial in its character — affecting ^ the remedy only. Whether the purpose of the statute under consideration is remedial in its character, we do not deem it necessary to decide. The rule of statutory con *83 struction, with or without constitutional inhibition and whether the statute is remedial, or otherwise, is that it must be interpreted as prospective unless the contrary intent is clearly manifested. The first and chief aim and object of a court in construing a statute is to ascertain the intention of the legislature, and in every country where the supremacy of law is recognized, it is far more reasonable to suppose that this intention was to legislate for the future rather than the past. Every reasonable doubt as to such intent must be resolved against, rather than in favor of, the retroactive operation of the statute. The leading case upon this subject in this jurisdiction is Railway Co. v. Woodward, 4 Colo. 162. In this, Chief Justice Thatcher said: “But when legislatures, even in the absence of a constitutional interdict, pass laws which might be so construed as to give them a retrospective effect, courts will not so interpret them unless the intention of the law-making power is clearly declared. With caution and distrust courts give retrospective statutes effect, even where the law-giver has constitutional power to enact them. ’ ’ To the same effect is Day v. Madden, 9 Colo. App. 464, in which Judge Bissell discussed the subject and affirmed the same rule in an able and exhaustive opinion. In United States v. Heth, 3 Cranch 399, it was said, in the opinion of the court: “Words in a statute ought not to have a retrospective operation, unless they are so clear, strong and imperative that no other meaning-can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied. ’ ’ The rule is founded on the soundest principles of public policy, and its reason is manifest. Every citizen is supposed to know the law, and to govern his conduct, both as to business affairs and otherwise, in accordance with its provisions. It would be a manifest injustice if after rights had become vested according to exist *84 ing laws, they could be taken away, in whole or in part, by subsequent legislation. And even in cases where the legislature is empowered to enact laws to some extent retroactive in effect, it would be equally unjust by judicial construction of a doubtful statute, to take away pre-existing rights, even so far as the remedy only was concerned. Such a course would tend inevitably to bring about a state of uncertainty and instability, which would not only bring the law into disrepute, but work serious injury in many cases.
In this case if the legislature had intended that the new matter in the amendatory statute should apply to or affect pre-existing judgments, it would have been most easy to have indicated such an intent. There is, however, not the slightest word in the phraseology used, even by the most forced construction, to indicate, in our opinion, such an intent. It.is true that there was no saving clause to the statute, but the prohibition of retrospective legislation in the constitution and the establised rule of statutory construction which we have mentioned, operate as a saving clause. In our opinion on the contrary, the phraseology of the statute indicates an intention that it should be prospective only. The judgments to which it was intended that the act should apply are mentioned in the first five lines of the section, which read as follows: “All and singular the goods and chattels, lands, tenements and real estate of every person against whom any judgment shall be obtained, in any court of record, either at law or in equity, etc. ’ ’ The word “shall” in its common and ordinary usage, unless accompanied by qualifying words which show a contrary intent, always refers to the future. Webster, in his dictionary, says, in reference to the early use of the word in the English language: “In the early English, and hence in our English Bible, shall is an auxiliary mainly used in all persons to express *85 simple futurity.” Here there were no qualifying words, although it would have been easy for the legislature, if it had intended that the act should affect pre-existing judgments, to have clearly manifested such intent by the simple insertion of the words “or have been” after the words “shall be” in the extract which we have just quoted.
There being nothing in the act to indicate an intention that it should be otherwise than prospective in its effect, we must hold that the' proviso, whatever its construction, did not apply to the judgment in this cause, and that hence the alias executions were lawfully issued. By thus holding, the statute is in no wise nullified, but full effect given to it, so far as concerns judgments subsequently rendered. These views are decisive of the case,, and it is not necessary to consider the other questions. We are spared the necessity of what would appear to be the rather onerous task of reconciling the conflict in. the statute, and of giving it any reasonable construction.
The judgment will be affirmed. Affirmed.
Gunter, J.,
having been of counsel, did not participate in the decision of this cause.