[No. 5090.]

[No. 2661 C. A.]

### Ducey et al. v. Patterson.

</div>

1. **Appellate Practice—Matters Occurring Subsequent to Judgment—Jurisdiction of Supreme Court.**

The supreme court has jurisdiction to interpret the legal effect of a stipulation, and to declare a judgment brought up by writ of error fully paid, where such stipulation has been filed in such court.—P. 220.

2. **Judgments—Joint Tort-Feasors—Release of Judgment as to One.**

The satisfaction of a judgment against one of several joint tort-feasors bars an action against the others, regardless of the intention shown not to release them.—P. 222.

3. **Judgments — Joint Tort-Feasors — Stipulation — Release of Judgment as to One—Covenant Not to Sue.**

A stipulation between a judgment creditor and some of the joint tort-feasors, against whom the judgment was obtained, stated that a settlement had been made of all controversies between them; that the judgment was thereby satisfied and that a pending writ of error should be dismissed as to them; and that by such stipulation defendant in error did not waive, relinquish or cancel said judgment as against the other judgment debtors. Held, that such stipulation was a release of the judgment as to all, and not a covenant not to sue as to the former.—P. 225.

4. **Constitutional Law—Statutory Construction—Ex Post Facto Law.**

Section 2528a of 3 Mills' (Rev.) Stats. (Sess. Laws 1899, c. 108, § 1), providing that a release of one or more joint debtors shall not release the remaining debtors, does not apply to the release of some of the joint debtors under a judgment rendered six days before the statute went into effect and when the unreleased debtor had a right to have the judgment first satisfied out of the others' property, as such construction would be contrary

to § 11, art. 2, Colo. Const., providing "that no ex post facto law * * * or retrospective in its operation * * * shall be passed by the general assembly.—P. 226.

*Error to the District Court of Arapahoe County. Hon. Geo. W. Allen, Judge.*

Action by Thomas M. Patterson against Patrick Ducey, individually, and Patrick Ducey, as administrator of the estate of Ellen G. Ducey, deceased, and Tyson S. Dines, D. H. Rice and A. G. Sharp, administrators, to collect the estate of Winfield S. Stratton, deceased.

> *Dismissed, and judgment declared fully paid and discharged.*

Mr. CHARLES J. HUGHES, Jr., for Patrick Ducey *et al.,* Mr. TYSON S. DINES and Mr. J. G. McMURRAY, for estate of W. S. Stratton, plaintiffs in error.

Messrs. RICHARDSON & HAWKINS, for defendant in error.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Material parts of the judgment in this case are as follows:

"It is therefore by the court ordered, adjudged and decreed that the plaintiff, Thomas M. Patterson, recover of the defendants, Patrick Ducey, Ellen G. Ducey and Winfield S. Stratton, the sum of two thousand dollars and all the costs in the cause in this behalf expended, and it is ordered that execution issue, as provided by law, for the collection of said amount."

"And it is further ordered, adjudged and decreed that the defendants, Patrick Ducey and Ellen G. Ducey, transfer and deliver to the plaintiff within thirty days from the date of this decree, seventy-five

hundred shares of the said fifteen thousand shares of the capital stock of The Portland Gold Mining Company, together with an assignment of all dividends declared on said seventy-five hundred shares of stock, since the 8th day of January, A. D. 1897, that being the date of the injunction in this cause.''

The judgment was rendered July 3, 1899. July 9, 1899, an act of the general assembly, entitled, ''An Act to allow the release of joint debtors,'' went into effect. (Session Laws 1899, page 239; 3 Mills' (Rev.) Stats., § 2528a.) The first section is as follows:

''A creditor of joint debtors may release one or more of such debtors, and such release shall operate as a full discharge of such debtor or debtors so released, but such release shall not release or discharge or affect the liability of the remaining debtor or debtors. Such release shall be taken and held to be a payment in the indebtedness of the full proportionate share of the debtor or debtors so released.''

August 10, 1905, there was filed in this court the following (after the title of the cause):

''In the above styled cause it is hereby stipulated and agreed that a settlement of all existing controversies between the defendant in error, Thomas M. Patterson, and the administrators, representatives and heirs of Patrick Ducey, deceased, and Ellen G. Ducey, deceased, has this day been made, and that the judgment rendered by the district court of Arapahoe County, on the 3d day of July, 1899, which judgment decreed that the said Patterson recover of said Patrick Ducey and Ellen G. Ducey and one Winfield S. Stratton, the sum of $2,000 and costs of action, and also decreed that the said Patterson was the equitable owner of 7,500 shares of the capital stock of The Portland Gold Mining Company, and ordered

that said stock be delivered to the said Patterson, together with an assignment of all dividends declared on said stock since the 8th day of January, 1897; and to reverse which judgment the writ of error in the above styled cause was sued out, has this day been satisfied, and is hereby satisfied and discharged, so far as it was rendered against the said Duceys.

"It is further stipulated that the writ of error, so far as the same was sued out by or on behalf of the said Duceys, may be, and the same is hereby, dismissed, neither party hereto to recover any costs against the other, and that the court may make such entries or orders of record as are necessary to carry into effect this judgment.

"The defendant in error, by the signing of this stipulation, does not waive, relinquish or cancel, the said judgment so far as it is against the said Winfield S. Stratton, but only acknowledges satisfaction of said judgment so far as the said Duceys are concerned.

"This July 10th, 1905.

>CHARLES J. HUGHES, Jr.,
>*Attorney for the Adminis-*
>*trators and Heirs of Patrick*
>*Ducey and Ellen G. Ducey.*
>
>RICHARDSON & HAWKINS,
>*Attorneys for Defendant in*
>*Error.*"

It will be observed that the foregoing act went into effect six days after the rendition of the judgment herein.

The executors of the last will and testament of Winfield S. Stratton, deceased, who have been substituted for said Stratton, move to dismiss the writ of error herein and to declare the judgment of the court below fully paid, performed and satisfied as to

the estate of Stratton, by reason of the stipulation filed herein by defendant in error, above set forth.

Defendant in error joins in the motion to dismiss the writ, but denies the authority of the court to satisfy the judgment, upon the grounds: (1) That the court is without jurisdiction to make such order. (2) That the stipulation and settlement between the Duceys and defendant in error does not release the Stratton estate, under the common law. (3) That the release is within the purview of the statute above quoted, and its force and effect controlled thereby.

1.   The first contention is disposed of by *Atkinson v. Tabor et al.,* 7 Colo. 197, wherein appellees moved to dismiss the appeal upon the ground, *inter alia,* that appellants, since taking the appeal, availed themselves of a large portion of the money deposited as purchase money of the mines involved in the litigation, and thus waived their right to have the judgment appealed from reviewed on appeal.   The court held:

"Matters may occur, subsequent to judgment, which operate to waive the right of a party to have the judgment reviewed on appeal, or upon writ of error.   When such matters appear of record, the objection is properly raised by a motion to dismiss; but when they do not so appear, the objection must be raised by a plea in bar of the proceedings in error. —Powell on Appellate Proceedings, 121, § 12a, and authorities cited.

"We entertain no doubt of the general proposition, that it is inconsistent with the principles of justice, and the rules of law, to permit a party, who has voluntarily taken advantage of a judgment rendered at *nisi prius,* to afterwards prosecute proceedings to reverse it.

"Neither have we any doubt of the jurisdiction of this court—when such conduct of a litigant before

it is properly alleged, and the matter does not appear of record—to institute the necessary inquiry whether the matters alleged to constitute the waiver have, in fact, occurred. To sustain the appellants' objection and hold that we are without power to institute such inquiry, is equivalent to saying that the supreme court of Colorado is without power to determine a question pertaining to its own jurisdiction."

The stipulation above quoted being a matter of record, this case falls within the rule above announced.

2. The judgment against Stratton was upon the theory, and it is so conceded, that he was a joint tort-feasor with the Duceys, his liability being founded upon his joining with the Duceys in the conception and consummation of a scheme to defraud defendant in error out of $2,000 and 7,500 shares of the capital stock of The Portland Gold Mining Company.

That the release or discharge of one or more joint tort-feasors, executed in satisfaction of the tort, is a release of all, has been held by this court in *Bowman v. Davis,* 13 Colo. 297, and *D. & R. G. R. R. Co. v. Sullivan,* 21 Colo. 302. Both cases quote approvingly the doctrine announced in Cooley on Torts (2d ed.), page 160:

"It is to be observed, in respect to the point above considered, where the bar accrues in favor of some of the wrong-doers, by reason of what has been received from or done in respect to one or more others, that the bar arises, not from any particular form that the proceeding assumes, but from the fact that the injured party has actually received satisfaction, or what in law is deemed the equivalent. Therefore, if he accepts the satisfaction voluntarily made by one, that is a bar as to all."—*Tompkins v. Clay St. R. R. Co.,* 66 Cal. 163; *Seither v. Phil. Trac-*

*tion Co.,* 125 Pa. St. 397; *Chapin v. C. & E. I. R. R. Co.,* 18 Ill. App. 47; *Brown v. City of Cambridge,* 3 Allen 474; *Leddy v. Barney,* 139 Mass. 394; *Goss v. Ellison,* 136 Mass. 503; *Donaldson v. Carmichael,* 102 Ga. 40.

In *Turner v. Hitchcock,* 20 Ia. 310, Mr. Justice Dillon, writing the opinion of the court, says:

"It is also an undisputed principle of the common law that, as a general rule, the release of one joint wrong-doer releases all. The rule and the reason for it are thus stated in a work of high authority: 'If divers commit a trespass, though this be joint or several, at the election of him to whom the wrong is done, yet if he releases to one of them, all are discharged, because his own deed shall be taken most strongly against himself.' Also (which seems to be the better reason), such release is a satisfaction in law which is equal to a satisfaction in fact. Bacon's Abr. tit. 'Release' B. * * * 'The reason of the rule' (that the release of one is the release of all) 'seems,' says Bronson, J., with his accustomed clearness and force (1 Hill. 185, *supra*), 'to be that the release being taken most strongly against the releasor is conclusive evidence that he has been satisfied for the wrong; and after satisfaction, although it moved from only one of the tort-feasors, no foundation remains for an action against any one. A sufficient atonement having been made for the trespass, the whole matter is at an end. It is as though the wrong had never been done.' "

By the great weight of authority the doctrine is settled, that, the satisfaction of a judgment against one of the several joint tort-feasors bars an action against the others.

This doctrine is applicable to the case under consideration, unless, as defendant in error maintains, this doctrine does not apply where the release shows

upon its face that it was not intended to release all, and insists, that the last paragraph of the stipulation above quoted brings it within the exception stated.

The authorities upon this subject are irreconcilable.

*Abb v. N. P. Ry. Co.*, 28 Wash. 428, was an action by a passenger upon a street car which came into collision with a railway train operated by the railway company, resulting in injuries to the plaintiff, for which damages were claimed against the railway company only. Plaintiff settled with the street railway company executing the following receipt:

"For and in consideration of the sum of three hundred dollars ($300), in hand paid, and a pass over the Grant Street Electric Railway for the period of one year, I, the undersigned, do hereby release and discharge the Grant Street Electric Railway Company from any and all damages done to me in my person or property in the late collision between a car of the Grant Street Electric Railway Company and a train of the Northern Pacific Railroad Company. This agreement is not to be taken or considered as a release of any damages which the undersigned may have against the Northern Pacific Railroad Company."

At page 433, the court said:

"It is urged that the release in the case at bar amounts to no more than an acknowledgment of partial satisfaction of the entire demand, and that this is made clear by the reservation of a right to make further demand of appellant, which appears at the conclusion of the written instrument set out above; in other words, it is insisted that the parties to that agreement did not intend it to be a release of appellant. As we have seen, however, they did intend it to be a release of appellant's joint tort-feasor.

\*   \*   \*   The following cases, however, not only support those already cited, but further hold that in an action to recover for a joint tort, if the plaintiff shall receive money in satisfaction of the wrong done him by one party, it is a satisfaction as to all, and they are thereby discharged of all liability to plaintiff, whether the parties to the release agreement intended it to so operate or not. See *Brown v. Kencheloe,* 3 Colo. 192; *Ellis v. Bitzer,* 2 Ohio 89 (15 Am. Dec. 534); *Ayer v. Ashmead,* 31 Conn. 447 (83 Am. Dec. 154); *Mitchell v. Allen,* 25 Hun. 543; *Gunther v. Lee,* 45 Md. 60 (24 Am. Rep. 504). In the cases last cited, there were reservations to the effect that, notwithstanding the release of one, others who were jointly liable should not be thereby released; but in each instance it was held that the release of one operated in law to release all. Referring to a release with such a reservation, the opinion in *Ellis v. Bitzer,* 2 Ohio, at page 93, makes the following observation:

" 'It can make no difference that it was part of the agreement between the plaintiff's agent and Williams and Adkins that the giving and receiving the note mentioned in the pleas was not to be a satisfaction for the other trespassers. Each joint trespasser being liable to the extent of the injury done by all, it follows as a necessary consequence that satisfaction made by one for his liability operates as a satisfaction for the whole trespass, and a discharge of all concerned. Williams and Adkins could make no agreement impairing the legal rights of the defendants, nor cede to the plaintiff the privilege these defendants had of availing themselves of any matter forming a legal defense to this action. The accord and satisfaction mentioned in the third plea operated in law as a discharge of these defendants from liability for the injury complained of by the plaintiff, and it was not in the power of other per-

sons to deprive them, by any agreement of theirs, of the benefit of this legal discharge.' "

The Washington court then reviews the authorities *contra* the above doctrine, including a number of cases relied upon by defendant in error here, and concludes, page 437:

"Other cases cited by respondent relate to contractual obligations, and we think the above a fair review of the authorities cited bearing directly upon the principle under discussion here. It will thus be seen that there is some conflict in authority, but we believe it is manifest from the foregoing that the decided weight of authority in this country is to the effect that such a release as is shown in this case operates to discharge all who participate in a joint tort. It is true it has been held, and doubtless correctly, that a mere agreement not to sue one is not a release of the others; but, when an injured party makes an estimate of the amount of damages, he is willing to receive from one, and accepts such sum with the agreement that it shall fully release and discharge the one making the payment, we think it is more than a mere agreement not to sue. It is a release of his cause of action in consideration of a satisfaction, and there is scarcely any dispute among the authorities that, where there is an absolute release of one, it operates to release all tort-feasors who participated in the same act."

The stipulation under consideration cannot be held to be a covenant not to sue, under any reasonable rules of construction, of which we are advised, so as to bring it within the rules applicable to such documents.

The authorities cited by counsel for defendant in error have been examined with care. Many of them are clearly distinguishable from the case under consideration. Suffice it to say that we believe the

better doctrine, supported by the greater weight of authority and by reason, is that stated in the *Abb case, supra.*

3. As observed above, the statute relied upon (3 Mills' (Rev.) Stats., § 2528a) did not take effect until six days after the judgment was rendered.

It must be conceded that Stratton had a vested interest in the judgment, as it was rendered, and as such had a right to have the judgment satisfied out of the property of the Duceys, before resort could be had to his estate for satisfaction.

To give to the statute the power and effect contended for by defendant in error would be contrary to § 11, art. 2, of the Colorado Constitution.

"That no *ex post facto* law, * * * or retrospective in its operation * * * shall be passed by the general assembly."

Upon this point, in *Jones v. Stockgrowers' National Bank,* 17 Colo. App. 79, 83, Judge Wilson, speaking for the court, said:

"The first and chief aim and object of a court, in construing a statute, is to ascertain the intention of the legislature, and in every country where the supremacy of law is recognized, it is far more reasonable to suppose that this intention was to legislate for the future rather than the past. Every reasonable doubt, as to such intent, must be resolved against, rather than in favor of, the retroactive operation of the statute. The leading case upon this subject in this jurisdiction is *Railway Co. v. Woodward,* 4 Colo. 162. In this, Chief Justice Thatcher said: 'But when legislatures, even in the absence of a constitutional interdict, pass laws which might be so construed as to give them a retrospective effect, courts will not so interpret them, unless the intention of the law-making power is clearly declared. With caution and distrust courts give retrospective

statutes effect even where the law-giver has constitutional power to enact them.' To the .same effect is *Day v. Madden,* 9 Colo. App. 464, in which Judge Bissell discussed the subject and affirmed the same rule in an able and exhaustive opinion. In *U. S. v. Heth,* 3 Cranch 399, it was said, in the opinion of the court: 'Words in a statute ought not to have a retrospective operation, unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied.' The rule is founded on the soundest principles of public policy and its reason is manifest. Every citizen is supposed to know the law and to govern his conduct, both as to business affairs and otherwise, in accordance with its provisions. It would be a manifest injustice if, after rights had become vested according to existing laws, they could be taken away, in whole or in part, by subsequent legislation. And even in cases where the legislature is empowered to enact laws to some extent retroactive in effect, it would be equally unjust, by judicial construction of a doubtful statute, to take away pre-existing rights, even so far as the remedy only was concerned. Such a course would tend inevitably to bring about a state of uncertainty and instability, which would not only bring the law into disrepute, but work serious injury in many cases.''

In *Perry v. City of Denver,* 27 Colo. 93, 95, the present Chief Justice said:

''In passing upon what is termed 'retrospective law,' various definitions have been given, dependent largely upon the particular facts presented in each case, but one generally accepted, which appears to fully cover the subject, in so far as the case at bar is concerned, is to the effect that a law is retrospective in its legal sense which takes away, or impairs,

vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions, or considerations, already past."

See, also, *Evans v. City of Denver*, 26 Colo. 193; *D. S. P. & P. Ry. Co. v. Woodward*, 4 Colo. 62.

We do not believe that it was the intention of the legislature that the statute under consideration should be retrospective in its effect.

To give it the construction contended for by defendant in error would violate the intention of the legislature in its enactment, bring it clearly within the definition laid down in *Perry v. Denver, supra,* and within the inhibition of § 11, art. 2, of the constitution, *supra.*

Our conclusions are, that the statute cannot be invoked in this case; that the judgment has been fully paid, performed and satisfied as to all the plaintiffs in error; that the writ of error should be dismissed, and that the judgment should be, and hereby is, declared fully paid and discharged, and it is so ordered.

*Dismissed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GUNTER concurring.