Argued June 20, affirmed June 27, 1916.

## MEDSKER v. PORTLAND RY., L. & P. CO.

(158 Pac. 272.)

**Death—Evidence—Sufficiency—Cause of Death.**

1. Evidence that deceased stood on one grounded guy wire, reached for a charged wire, and fell and was killed, is insufficient to sustain a verdict that the fatal fall was due to touching the charged wire rather than through loss of balance.

[As to doctrine of *res ipsa loquitur* as applicable to injury to person from electrical appliances on private property, see note in **Ann. Cas. 1913A, 1184.**]

From Multnomah: Calvin U. Gantenbein, Judge.

Department 2. Statement by Mr. Chief Justice Moore.

This is an action by Florence A. Medsker, widow of Willis C. Medsker, to recover damages from the Portland Railway, Light & Power Company, a corporation, for causing the death of said Willis C. Medsker, which is alleged to have been caused by the defendant's negligence. From a judgment rendered on a directed verdict in favor of the defendant, the plaintiff appeals.

Affirmed.

For appellant there was a brief over the names of *Mr. C. M. White* and *Mr. George T. Wilson,* with an oral argument by *Mr. White.*

For respondent there was a brief over the names of *Mr. F. J. Lonergan* and *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. Lonergan.*

Opinion by Mr. Chief Justice Moore.

1. It appears from a transcript of the testimony that on September 13, 1913, the deceased, a sober, experienced lineman, was employed by the Home Telephone Company, repairing its line at the intersection of Nineteenth and Multnomah Streets in Portland, Oregon. In ascending a tall pole of that company at the northwest corner of the street crossing mentioned, he placed his foot on a grounded guy wire leading to the west and was seen apparently trying to grasp a grounded guy wire above his head, leading south across Multnomah Street to the top of a guy pole around which it was wound and fastened. From the

top of this latter pole another guy wire descended to the south and was anchored in the ground. The stay wire which led to the south extended beneath and came in contact with a wire on the south side of Multnomah Street, which latter wire was operated by the defendant, the Portland Railway, Light & Power Company, and used in transmitting electricity for illumination. The Home Telephone Company had not installed a current-breaker, to prevent the flow of electricity along the south guy wire to the pole to the north, to which it was fastened.

The theory of the plaintiff's counsel is that the deceased, having placed his foot upon the ground wire extending west, thrust his hand up and brought it against the grounded south guy wire, which latter stay was charged with electricity by the defendant's wire, thereby forming with his body a circuit, in trying to escape from which he fell, striking his head and shoulders on the pavement, and died.

When the plaintiff had introduced her testimony and rested, the defendant's counsel moved for a judgment of nonsuit which was denied; the court then observing that the same question could be raised on a motion for a directed verdict, if no further evidence in support of the cause of action were produced. The defendant thereupon introduced in evidence a writing, which, omitting the names of the witnesses and the acknowledgment by the plaintiff certified to by a notary public, reads:

"These presents witness: That for and in consideration of the sum of fifteen hundred dollars ($1,500.00) to me paid by the Home Telephone & Telegraph Company, of Portland, Oregon, and the further agreements on their part herein set forth, I do hereby covenant and agree that I will not sue the Home Telephone &

Telegraph Company, of Portland, Oregon, nor suffer suit to be brought on my behalf or on behalf of any of the heirs or representatives of my late husband, W. C. Medsker, on any cause of suit or action arising out of his death.

"I further agree that upon reimbursements of the necessary costs and charges therefor I will cause an administrator to be appointed over the estate of my said husband, and upon payment by the Home Telephone & Telegraph Company, of Portland, Oregon, to said administrator of the further sum of fifteen hundred dollars ($1,500.00) I will cause the said administrator to give a like covenant not to sue the said Home Telephone & Telegraph Company, of Portland, Oregon.

"It is expressly agreed and understood, however, that this covenant is solely personal with the Home Telephone & Telegraph Company, of Portland, Oregon; that it does not discharge or release the right of action in said case; and that I may pursue any action that I may be advised against other defendants in said cause.

"In witness whereof, I have hereunto set my hand and seal, this 18th day of October, 1913.

"[Signed]    Mrs. Florence Medsker.    [Seal.]"

The defendant also offered in evidence a similar paper, executed to the same company by the plaintiff, as administratrix of the decedent's estate, and acknowledging the further payment of $1,500.

The court, holding these memoranda to be releases of a joint tort-feasor, sustained a motion for a directed verdict for the defendant, and, a judgment having been rendered thereon, it is contended by plaintiff's counsel that an error was thereby committed. It is maintained by defendant's counsel, however, that the testimony offered by the plaintiff failed to establish a cause of action sufficient to be submitted to the jury, and, such being the case, any action of the court, based upon the receipts referred to, was immaterial.

If it be determined that the judgment of nonsuit should have been given, it will be unnecessary to consider whether or not the receipts executed to the Home Telephone & Telegraph Company by the plaintiff were releases or covenants not to sue that joint tort-feasor. For a discussion of this subject, see 1 Cooley, Torts (3d ed.), 235; *Stires* v. *Sherwood,* 75 Or. 108 (145 Pac. 645); *McBride* v. *Scott,* 132 Mich. 176 (93 N. W. 243, 102 Am. St. Rep. 416, 1 Ann. Cas. 61, 61 L. R. A. 445); *Pickwick* v. *McCauliff,* 193 Mass. 70 (78 N. E. 730, 8 Ann. Cas. 1041); *Ducey* v. *Patterson,* 37 Colo. 216 (86 Pac. 109, 119 Am. St. Rep. 284, 11 Ann. Cas. 393, 9 L. R. A. (N. S.) 1066); *Robinson* v. *St. Johnsbury etc. R. Co.,* 80 Vt. 129 (66 Atl. 814, 12 Ann. Cas. 1060, 9 L. R. A. (N. S.) 1249); *Musolf* v. *Duluth Edison Electric Co.,* 108 Minn. 369 (122 N. W. 499, 24 L. R. A. (N. S.) 451); *Farmers' Savings Bank* v. *Aldrich,* 153 Iowa, 144 (133 N. W. 383); *Louisville & N. R. Co.* v. *Allen,* 67 Fla. 257 (65 South. 8, L. R. A. 1915C, 20); *Abb* v. *Northern Pacific Ry. Co.,* 28 Wash. 428 (68 Pac. 954, 92 Am. St. Rep. 864, 58 L. R. A. 293).

Considering the motion for a judgment of nonsuit: The testimony of George L. Hines, the city foreman of the Home Telephone Company, is to the effect that he reached the scene of the accident about 20 minutes after it occurred; that he found the south guy wire, which extended to the ground, "hot," indicating it was charged with electricity; that a man climbing the telephone pole, at the place of the accident, and standing on the west guy wire, would necessarily get a shock if he touched the south guy wire. In referring to the latter stay which was wrapped around the top of the guy pole, and to another stay which encircled it at the

same place and in the same manner and was anchored in the ground, the witness stated upon oath:

"They are the same wire by contact. It isn't a continuous wire, but metallically they are the same."

Harry Achtert, who was standing at the northeast corner of the intersection of Nineteenth and Multnomah Streets, facing west and talking with Harold Cherry, who was facing east, referring to Mr. Medsker, testified as follows:

"Well, he started in and climbed the pole with his back toward me, and I was watching him. I wasn't paying much attention to him, though; but when he got up there he swung around on the cable, and I wasn't just watching him right then, but just when I looked up I saw him grab for that long cable [referring to a telephone cable suspended by metallic hooks to a messenger wire, upon which he was working and which was immediately above the south guy wire].

"Q. And what happened?

"A. And he fell. * *

"Q. And where were his feet? Do you know?

"A. On this one [alluding to the west guy wire, indicated as No. 5 on a photograph received in evidence].

"Q. Just state what his position was up there.

"A. He was facing north. * *

"Q. How long was he there?

"A. Oh, he was climbing up, and when he got up there he just stopped for an instant—just a moment.

"Q. And then what?

"A. And then he started in to fall, and grabbed for the cable."

On cross-examination he was asked:

"And you were watching Mr. Medsker climb that pole, were you?"

He answered: "Yes, sir."

"Q. Watching him every moment?

"A. No, I wasn't watching him all the time.  I was just glancing up there and—

"Q. (Interrupting.)  Just glancing from time to time?

"A. Yes, sir.

"Q. And when you saw him climb up near the top of the pole, you saw him make a grab for the cable, didn't you?

"A. Yes, sir.

"Q. And he did not touch it, did he?

"A. No, sir.

"Q. And he missed it and fell over backward?

"A. Yes, sir."

On redirect examination this witness, referring to Mr. Medsker at the time he fell, further testified: "He grabbed with his right hand, but I couldn't see his left hand, because he was on that side." The court, referring to the deceased, inquired: "Did he reach the cable with his right hand?" The witness replied: "No, he didn't reach it with his right hand."

This constitutes the entire testimony relating to the cause of the injury.  The death was undoubtedly occasioned by the fall, but whether the descent resulted from coming in contact with the south guy wire, or was caused by the deceased losing his balance, is problematical.  In *Spain* v. *Oregon-Washington R. & N. Co.*, 78 Or. 355 (153 Pac. 470, 475), Mr. Justice Mc-BRIDE, in discussing the uncertainty of such testimony, observes:

"When the evidence leaves the case in such a situation that the jury will be required to speculate and guess which of several possible causes occasioned the injury, that part of the case should be withdrawn from their consideration."

We conclude the rule thus announced is controlling in this instance, and, this being so, the judgment should be affirmed, and it is so ordered.          AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE HARRIS and MR. JUSTICE McBRIDE concur.