## No. 9717.

### COBB *v.* INTERNATIONAL STATE BANK.

1. CHATTEL MORTGAGE—*Annual Sworn Statement—Statute Construed.* The saving clause in the repeal of Rev. Stat., sec. 515 (Laws 1917, c. 43) preserves the validity of existing mortgages, but neither expressly nor by implication continues upon the mortgagee the duty to file annual statements as required by the section repealed.

The act of 1917 applies to existing chattel mortgages as well as to those subsequently executed.

The act so construed is not opposed to Sec. 11 of Art. II of the Constitution.

And the holder of a chattel mortgage not in default as to any annual statement when the act of 1917 took effect, was not affected by the provisions of Sec. 6298.

2. *Possession Taken by a Mortgagee—Effect.* After possession lawfully taken by the mortgagee he is not required to file any statement, either to preserve the lien of the mortgage, or secure its renewal at the date of expiration.

*Error to Las Animas District Court, Hon. A. F. Hollenbeck, Judge.*

Mr. JAMES MCKEOUGH, Mr. HENRY HUNTER, Mr. FRANK C. WEST, for plaintiff in error.

Mr. A. W. MCHENDRIE, for defendant in error.

Opinion by Mr. Justice Allen:

ON May 17, 1917, The Black Diamond Niggerhead Coal Mining Company executed and delivered to Earl Cobb two promissory notes, each in the sum of $12,500 with interest, the first due in one year, and the second maturing in two years. To secure the payment of the notes, the mining company, on the same day, executed and delivered to Cobb a chattel mortgage upon certain mining machinery and equipment. The chattel mortgage was duly filed for record by the mortgagee, and recorded in the office of the county clerk and recorder of Las Animas County, on May 23, 1917.

On March 7, 1919, Earl Cobb, the above named mortgagee, and hereinafter referred to as the plaintiff, brought an action in replevin against the mortgagor mining company, and by means of a writ of replevin obtained possession of the property covered by the chattel mortgage in question. In the complaint the plaintiff alleges that he is still the owner and holder of the promissory notes; that the defendant mining company failed to pay the principal of the note that became due May 19, 1918, or the interest due on either note; and, that the defendant refuses to deliver possession of the property, under the terms of the chattel mortgage.

On August 27, 1919, The International State Bank filed, in this action, its petition in intervention. The petition admits the execution, delivery, and recording of the chattel mortgage, the time thereof, and the parties to the same, as above stated and as alleged in plaintiff's complaint. The petition in intervention further alleges that on August 27, 1919, the intervenor recovered a judgment, in the District Court of Las Animas County, against the defendant mining

company, in the sum of $7,863.30, and that on this judgment a writ of execution was issued, and a levy made upon the property, hereinbefore mentioned, as the property of the defendant. The foregoing, and other allegations, are set forth in the petition for the purpose of showing, or attempting to show, that the intervenor, as a judgment creditor, has a lien upon the property described in the chattel mortgage, which is prior and superior to the lien of the plaintiff, the mortgagee of such property.

The plaintiff filed a demurrer to the petition in intervention. Thereafter, and on October 14, 1919, the demurrer was overruled. The plaintiff elected to stand upon the demurrer, and judgment was entered in favor of the intervenor. To review this judgment, and particularly the court's ruling on the demurrer, the plaintiff brings the cause here for review.

The controversy, at present, is solely between the plaintiff, as mortgagee of chattels, and the intervenor, as judgment creditor. The ultimate question to be determined, is whether or not, under the allegations of the petition in intervention, the intervenor's lien, upon the property covered by the chattel mortgage, is prior and superior to the lien of the plaintiff.

The petition, in addition to what has already been stated, contains allegations to the effect that the plaintiff had not, at any time since the recording of his chattel mortgage, filed for record or caused to be recorded any sworn statement regarding the condition of the mortgage debt. These allegations give rise to the controversy, and are set forth in the petition by the intervenor in reliance upon the chattel mortgage act as found in Chapter XXIII, R. S. 1908, and particularly section 515 thereof, which, so far as material here, reads as follows:

"Any mortgage of personal property so certified shall be admitted to record by the recorder of the county wherein the property mortgaged, or the greater part thereof, shall be situated, and shall thereupon, if *bona fide*, be good and valid from the time it is so recorded until the maturity of

the last installment of the mortgage indebtedness,   *   *
*   .   Provided,   *   *   *   That if such mortgage be
given to secure a sum greater than twenty-five hundred
(2,500) dollars, there shall be recorded annually on the
records of the connty wherein such mortgage shall have
been recorded, a sworn statement of the mortgagee,   *   *
*   showing:

First.   That said mortgage was given in good faith to
secure the payment of the sum of money mentioned therein.

Second.   That said sum of money is still unpaid; or if a
portion thereof shall have been paid, then how much there-
of, if any, remains unpaid."

The contention of the plaintiff in error, plaintiff below,
is that the statute above quoted is not applicable to the
plaintiff's mortgage, or to the necessity of filing a sworn
statement in order to preserve the validity of the chattel
mortgage as against third persons, but that the statute
which *is* applicable to, and governs, the foregoing matters,
is the chattel mortgage act of 1917, being chapter 43, Ses-
sion Laws 1917.   Section 7 of the Act of 1917 is practically
the same, as regarding the sworn statement required, as
section 515 R. S. 1908, except as to the time when the first
annual sworn statement shall be filed.   The language of
section 7, in this respect, is as follows:

"There shall be filed annually, beginning with the third
anniversary of the filing or recording of such mortgage,
in the office of said clerk and recorder, a sworn statement
of the mortgagee, or one of the mortgagees if there be
more than one, or by the assignee of such mortgagee, show-
ing:

First.   That said mortgage was given in good faith to
secure the payment of the sum of money mentioned therein.

Second.   That said sum of money is still unpaid; or if a
part has been paid, how much thereof remains unpaid."

If the Act of 1917 is controlling in the instant case, the
plaintiff was never in default for failure to file an annual
sworn statement, because under this statute such statement
would not be required or due until May 23, 1920, the third

anniversary of the recording of the chattel mortgage. It is conceded that if the Act of 1917 is applicable, the demurrer should have been sustained.

The Act of 1917 expressly repeals section 515 R. S. 1908, as well as the rest of the chattel mortgage act as found in Chapter XXIII, R. S. 1908. The repealing section contains the following saving clause:

"But nothing in this act contained shall modify or impair the effect or validity of any chattel mortgage, or the lien thereof, filed or recorded, pursuant to law, prior to the time when this act becomes effective."

This saving clause merely preserves the validity of existing mortgages, but neither expressly nor by implication preserves the duty of a mortgagee to file sworn statements "annually," as provided in the act repealed. The effect of the repealing section was to relieve the plaintiff from the necessity of following the provisions of the former statute, in the matter of filing annual sworn statements. 11 C. J. 543, sec. 233; *Ransom v. Schmela,* 13 Nebr. 73, 12 N. W. 926.

It is not disputed that the plaintiff's chattel mortgage was valid at the time the Act of 1917 went into effect, which was July 5, 1917, and long prior to the time when the intervenor became a judgment creditor of the mortgagor. To preserve the validity of his mortgage, after July 5, 1917, the plaintiff was bound to follow the provisions of the new act, and not the former statute. The Act of 1917, as to the necessity of recording the sworn statement, is applicable to chattel mortgages existing or recorded at the time of its enactment as well as those executed afterwards. An amendatory act altering the period within which a chattel mortgage must be refiled or renewed is applicable to existing mortgages. 11 C. J. 544, sec. 233.

The Act of 1917, thus construed, is not in violation of section 11, Article II, of our Constitution, which provides that no "law impairing the obligation of contracts, or retrospective in its operation, * * * shall be passed by the general assembly." *Stevenson Brewing Co. v. East-*

*ern Brewing Co.,* 22 App. Div. 523, 48 N. Y. S. 89; *Harvey v. Ciocco,* 32 Ohio Cir. Ct. 379; *Aultman & Taylor Machinery Co. v. Fish,* 120 Ill. App. 314.   Each of the cases above cited involved renewal or refiling provisions of a chattel mortgage statute.   Our Court of Appeals, in *Ellison v. Tuckerman,* 24 Colo. App. 322, 134 Pac. 163, in referring to a section of the chattel mortgage act, section 520, R. S. 1908, relating to the extension of chattel mortgages, said:

"It is purely a remedial statute amendatory of an act theretofore existing, and applied to mortgages in force at the time it became effective as well as to those subsequently executed, and is not obnoxious to the constitutional inhibition against retrospective legislation."

The intervenor relies upon the general saving statute, section 6298, R. S. 1908, which provides that:

"The repeal, revision, amendment or consolidation of any statute or part of a statute or section or part of a section of any statute shall not have the effect to release, extinguish, alter, modify, or change, in whole or in part, any penalty, forfeiture, or liability, civil or criminal, which shall have been incurred under such statute  *   *   *   ."

Under that statute, the penalty, forfeiture or liability which is saved, is one not merely incurred according to the terms of the repealed statute, but must be one incurred prior to the time the repealing act takes effect.   36 Cyc. 1234.   Assuming, without deciding or conceding, that the duty of a mortgagee to file a sworn statement can ever subject him to a penalty, forfeiture or liability, within the meaning of the statute, such penalty, forfeiture or liability would not be incurred unless the mortgagee was in default for failure to perform that duty, and therefore could not be incurred until the time should arrive when it becomes necessary for him to file the sworn statement.   Under the repealed statute, the plaintiff was not required to file any sworn statement until a year after the execution or recording of the chattel mortgage, or until some time in May, 1918.   Long before that time arrived, and on July 5, 1917, the Act of 1917 went into effect, superseding the former

statute. On July 5, 1917, only forty-one days had elapsed since the recording of the mortgage. The plaintiff had never been in default, therefore, for failure to file the sworn statement, and, consequently, no penalty, forfeiture, or liability had been incurred, if it ever could be incurred, at the time the former statute was repealed.

The petition in intervention goes no further than to challenge, solely on the grounds hereinbefore discussed, the validity of the plaintiff's chattel mortgagee, as against the intervenor, at the time the plaintiff took possession of the property, which was March 7, 1919. For the reasons stated in this opinion, the grounds relied on are not tenable, and the petition therefore fails to show that intervenor's lien upon the property is prior to, or entitled to priority over, the plaintiff's chattel mortgage lien.

No attempt is made by the intervenor to show that the plaintiff did not rightfully take possession of the property on March 7, 1919, if at that time his mortgage was valid against all third persons. It must therefore be assumed, as against the intervenor, that the plaintiff, as mortgagee, was rightly in possession on and after March 7, 1919. Having taken such possession, it was not necessary thereafter for the plaintiff either to file such a statement as is required to preserve the validity of an existing mortgage, or such a statement as may be necessary to secure the renewal of an expiring mortgage. 11 C. J. 544, sec. 234.

The judgment is reversed, with directions to sustain the plaintiff's demurrer to the intervenor's petition, and to dismiss the intervention.

*Reversed.*

Chief Justice Garrigues and Mr. Justice Bailey concur.

Decided December 1, 1919. Rehearing denied January 5, 1920.