## No. 14,951.

VAIL, STATE HIGHWAY ENGINEER *v.* DENVER BUILDING AND
CONSTRUCTION TRADES COUNCIL ET AL.

(115 P. [2d] 389)

Decided June 23, 1941.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Oliver Dean, Assistant, Mr. C. H. Anderson, Assistant, Mr. George K. Thomas, Assistant, Mr. R. Hickman Walker, Special Attorney General, for plaintiff in error.

Mr. Philip Hornbein, Mr. Philip Hornbein, Jr., Mr. F. E. Dickerson, Mr. T. J. Morrissey, Mr. C. D. Bromley, for defendants in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

Alleging that a dispute existed concerning the rates of wages to be paid workmen on a certain highway project for the construction of which bids had been invited through advertisement by the plaintiff in error Vail, as state engineer, the defendants in error labor unions, in the district court, as plaintiffs, sought to restrain Vail and the defendants in error Horner, Brewer and Monaghan, whom the plaintiffs identified as the

low bidders on the project, from "entering into any contracts or from proceeding in the execution or consummation of any contract" for the construction until the prevailing rates of wages should be fixed as by law required. Following a hearing, the district court, although finding that the contract for the construction had been awarded to Horner and others, as they and Vail alleged, nevertheless concluded that a dispute existed as to what was the applicable prevailing wage scale, remanded the matter to the Industrial Commission for the immediate determination of such and ordered that if the inquiry should disclose that the wage scales contained in the bids and the invitation therefor were less than the prevailing local rates for work of a similar nature, the state should pay the excess differential. The court also enjoined the commencement of labor on the project and it is agreed that no workman has ever been employed thereon. Following such judgment plaintiff in error Vail alone sued out a writ of error in this court to review the adjudication. His codefendants below were consequently here joined as defendants in error.

Concededly the rights asserted in the complaint, the remedies sought to be invoked thereby, and the redress attempted by the judgment of the district court were grounded solely on section 257, chapter 97, '35 C.S.A. (§1, chapter 124 S.L. 1933), relating to the rates of wages on public works.

During the pendency of the review proceedings in this court the Thirty-Third General Assembly enacted, and the Governor approved — effective by an emergency clause as of April 15, 1941 — House Bill 992, (S.L. '41, c. 166, §1) amending section 257, supra, and repealing all provisions of the original section in conflict with the new. Soon thereafter in this court Vail and the contractors interposed a motion to dismiss the complaint upon the ground that the entire controversy had been rendered moot by such amendment and repeal of what

herein we shall designate as original section 257. This motion was orally argued to a department of this court. However, since one of the contentions raised in the argument of counsel for the unions, supported by briefs coincidentally filed, was based upon a provision of the Constitution, hereinafter to be mentioned, the case has been considered by the court en banc. This study has convinced us that the motion to dismiss must be sustained and accordingly as nearly as is consistent with clarity, we shall limit our discussion of the controversy to this question alone.

Original section 257 prescribed that every contract in excess of $5,000 to which the State of Colorado was a party and which required the employment of laborers and mechanics on public works, including highway construction, should provide that the rate of wages for the laborers and mechanics employed thereunder, should be not less than the prevailing rate of wages for work of a similar nature in the locality involved. The section further stipulated that the prevailing rates of wages should be stated in the invitation for bids and included in the bids for the work and that in case any dispute arose as to what were the prevailing rates, which could not be adjusted by the contracting official, the matter should be referred to the Industrial Commission for determination. The section as amended eliminates the previous requirement that the locally prevailing rates of wages should be paid on highway construction contracts and in contrast, in minute and specific detail, sets out schedules of minimum rates of wages applicable in various sections of the state for "workmen, mechanics and laborers" employed by parties holding contracts with the state highway department. By deletion in the above particulars the new act withdrew the previously conferred jurisdiction of the Industrial Commission to establish minimum rates of wages for highway construction contracts under any circumstances whatsoever and imposed the legislative rates, which, incidentally are

identical with the scale advertised by Vail in the instant case, as the sole criterion of the wages to be paid on such. Unquestionably, both statutes were purposed to legislatively declare the public policy of the state on the subjects covered.

It is conceded by all parties, as is apparent from the act itself, that House Bill 992 contains no express saving clause as to pending matters, inchoate rights or issues in litigation.

■■ As is evident from even this brief summary of the terms of the new law, the validity of which is herein unquestioned, the precise right claimed by the plaintiffs, i. e., that workmen on contracted state highway construction be paid wages at a rate not less than the prevailing local wage for work of a similar nature, and the remedy herein invoked, i. e., the jurisdiction of the Industrial Commission to determine the same in case of a dispute with the contracting official, no longer exist in Colorado as to contracts awarded since the effective operative date of House Bill 992. Thus, here the only question is, whether the new act operates to defeat a suit pending to enforce the right and remedy so legislatively taken away? "The general rule is that powers derived wholly from a statute are extinguished by its repeal * * *. And it follows that no proceedings can be pursued under the repealed statute, though begun before the repeal, unless said proceedings be authorized under a special clause in the repealing act." *Flanigan v. Sierra County*, 196 U.S. 553, 25 Sup. Ct. 314, 49 L. Ed. 597. In Endlich on Interpretation of Statutes, pages 683, 684, sections 479, 480, it is stated: "Wherever the jurisdiction exercised in proceedings depends wholly upon statute, and the statute is repealed, * * * the jurisdiction is gone, and with it the whole proceeding, imperfect at the time of the repeal or expiration, falls to the ground, unless there be a reservation as to pending rights or causes. * * * The same rule applies to rights and remedies founded solely upon statute, and to suits

pending to enforce such remedies. If, at the time the statute is repealed, the remedy has not been perfected or the right has not become vested, but still remains executory, they are gone." See, also, Lewis' Sutherland on Statutory Construction, vol. 1, page 550, section 285. The case of *Harrison v. Smith,* 2 Colo. 625, is in accord with the foregoing. The rule as above stated is supported by a legion of authorities, among which are: *Moss v. Smith,* 171 Cal. 777, 155 Pac. 90; *McNabb v. City of Tonica,* 103 Ill. App. 156; *Wilson v. Head,* 184 Mass. 515, 69 N.E. 317.

Counsel for the unions do not seriously question that the law on the subject under consideration is as above stated, but contend that the destructive effect of the repeal on the incomplete proceeding at bar is avoided by the general saving clause contained in section 4, chapter 159, '35 C.S.A. They further assert that the prohibition against retrospective legislation contained in section 11, article II of the Constitution operates as a saving clause incorporated into the new repealing act. Section 4, supra, specifies that the amendment or repeal of any statute shall not have the effect to release, extinguished, modify or change in whole or in part any penalty, forfeiture or liability, either civil or criminal, which shall have been incurred under such statute and the act so amended or repealed shall be treated as still remaining in force for the purpose of sustaining all proper proceedings for the enforcement of such penalty, forfeiture or liability unless the new statute expressly provides to the contrary. This general provision is to be given the same effect as a saving clause in the repealing statute itself. *Day v. Madden,* 9 Colo. App. 464, 48 Pac. 1053. This section, however, has no application to acts other than those which relate to a penalty, forfeiture or liability *incurred* under such statutes. *Perry v. Denver,* 27 Colo. 93, 59 Pac. 747. It is quite evident that no penalty or forfeiture is sought to be recovered or enforced in the proceeding at bar. Even if in the

broadest conception the term "liability" could be considered as including the administrative duties imposed and privileges conferred by original section 257, such liability, to be preserved by section 4, supra, after the repeal of the former, must have been incurred, that is, attached, vested or accrued before such repeal was effected. See, *Day v. Madden, supra; Cobb v. International State Bank*, 67 Colo. 488, 186 Pac. 529, and *Cavanaugh v. Patterson*, 41 Colo. 158, 91 Pac. 1117. Such was not the situation here. Plaintiff unions, as the mouthpiece of the workmen *prospectively* to be employed on the *contemplated* highway construction involved, sought to enjoin the highway engineer and the low bidders from entering into a contract for such work upon the ground that the former, with the knowledge of the latter, had failed to comply with the public policy of the state as then declared by original section 257 concerning the rates of wages to be paid to workmen *later* to be selected, and prayed that the same be established by the Industrial Commission *before* any contract was let. If the relief asked by plaintiff had been secured by acquiescence or court order, and House Bill 992 had been enacted before the new contract so contemplated was made, it seems perfectly clear that, notwithstanding all that had gone before, such new contract of necessity must have carried the statutory wage scales prescribed by House Bill 992 and no other. This is evident because, from the moment it became effective, neither the highway engineer, in the first instance, nor the Industrial Commission in case of dispute, longer had power or jurisdiction to establish minimum contract rates of pay, and no workmen later to be employed under the new contract had any vested right to demand more than the statutory rate. Thus the right sought to be enforced was inchoate in its substance and prospective in effect, as was the remedy invoked. It is well established that where a statute gives certain rights of action upon grounds of public policy, no vested rights as to the con-

tinuance thereof are conferred, and notwithstanding the existence of a general saving statute such as ours, the repeal of the provision takes away all its benefits as regards incomplete actions existing at the time of the repeal, whether they be pending in appellate or trial courts. *Western Union Telegraph Co. v. Louisville N. R. R. Co.,* 258 U.S. 13, 42 Sup. Ct. 258, 66 L. Ed. 437, wherein the effect of a Kentucky statute generally similar to section 4, supra, was considered and held not to be operative. See, also, *Harrison v. Smith, supra; Perry v. Denver, supra,* and Endlich on Interpretation of Statutes, page 691, section 486.

Except as to the effect of the determination therein, as hereinabove cited, that the general saving clause, section 4, supra, within the scope of its application, should be considered as being incorporated in all subsequent legislation containing no express saving clause, the case of *Day v. Madden, supra,* which was not cited by plaintiffs but has been considered in our deliberations, is without application in this controversy. Further, its inaptness is made apparent by an examination of the opinion therein, and from the opinion in *Madden v. Day,* 24 Colo. 418, 51 Pac. 165, written when the controversy was disposed of in this court. In that case a writ of attachment had been issued and the levy made upon the then available ground that the action arose on an overdue promissory note. Before final judgment was entered the legislature, with no express saving clause, struck from the law the ground of attachment relied upon and in the lower court a motion to quash the writ was sustained on this account. In reversing this judgment the court of appeals held that the *lien* arising from the *levy* of the writ, said to have been absolute from the time thereof, created a *vested* right and liability which, after the repeal, was preserved by the general saving statute, section 4, supra. In antithesis, as has been mentioned above, the action at bar was designed to forestall and prevent the vesting of contract rights

prospectively adverse to plaintiffs through the alleged illegal threatened conduct of a public officer. It would seem that any attempt to give the rule of *Day v. Madden, supra,* a controlling effect in the case at bar is as illogical as to say that by its doctrine the repealed ground of attachment· involved in the Day case was preserved to any person who happened to hold a promissory note overdue on the day preceding the date upon which the repealing act was effective. In other words, the *levy* and the resultant *lien,* not the inchoate right generally conferred by the previous law, nor the bringing of the action for the enforcement thereof, saved the cause of action in that case.

The considerations above detailed also disclose the impertinency in this controversy of section 11, article II of the Constitution prohibiting the passage of laws retrospective in operation, since such applies solely to statutes which take away or impair a *vested* right acquired under existing laws or create a new obligation or impose a new duty or attach a new disability in respect to transactions or considerations already past. *Moore v. Chalmers-Galloway Live Stock Co.,* 90 Colo. 548, 10 P. (2d) 950, and *Day v. Madden, supra.* Our conclusion in this respect in no wise is inconsistent with the pronouncements of *Denver, etc., Ry. Co. v. Woodward,* 4 Colo. 162, cited by the unions, since in that case a *vested* right to damages had accrued under the old statute before its repeal by the enactment condemned as being retrospective in effect.

In view of the state of the record and our conclusions herein announced, it is ordered that the cause be remanded to the district court with directions to dismiss the complaint.

MR. JUSTICE OTTO BOCK concurs specially.

MR. JUSTICE HILLIARD dissents.

Mr. Justice Otto Bock specially concurring.

I concur in the dismissal of the complaint. I do think, however, that this should be done on the merits, and not on the motion to dismiss. There is ample evidence upon which to sustain the finding of the trial court that a dispute existed about the prevailing rates of wages as applied to the alleged contract within the meaning of section 257, chapter 97, '35 C.S.A. That being true, there could be no valid agreement, because the rates, in the event of a dispute, must first be determined by the Industrial Commission in order to become "an essential element of the contract." *Denver Trades Council v. Vail,* 103 Colo. 364, 86 P. (2d) 267; *Industrial Commission v. State Federation of Labor,* 107 Colo. 206, 110 P. (2d) 253. To be valid, the rate level, under the circumstances, must be ascertained before the contractual stage is reached, not afterwards.

There being here no contract, there was no "liability" which was released, extinguished, altered, modified or changed by H.B. 992, amending section 257, supra, approved April 15, 1941, on which section 4, chapter 159, '35 C.S.A., could operate. The freezing of wage levels on construction contracts, in which the state is a party, and which involves the employment of laborers or mechanics, whether wise or unwise, is solely a legislative problem.

Mr. Justice Hilliard dissenting.

I was absent when the motion determined in the court opinion was argued orally; but since it is thought desirable that all the judges participate in the consideration of the cause, I have given attention to the matter. It is to be noted that the case came to issue here April 3, 1941, while the motion to dismiss was not filed until April 29. The statute on which that motion is predicated was signed by the Chief Executive, and became effective April 15.

I think the motion to dismiss is without merit. The statute on which the labor parties to the proceeding based their injunction suit was in force when advertisement for bids for the work involved was made, when bids were submitted, and when, on their bid, Horner, Brewer and Monaghan, other parties, were awarded the contract. It was in force during the pendency of the suit in the trial tribunal, and for nearly a month following the time when the matter was at issue here, as we have seen. Because the new statute does not contain a "saving'clause as to pending matters, inchoate rights or issues in litigation," to quote from the court opinion, rights which labor enjoyed under the former statute, and concerning which its representatives had judgment at trial—not reversed or even considered here—they are dismissed from the temple of justice. The test, as I conceive, is not whether the new act contained a saving clause, as the court adjudges, but rather whether it ·expressly negatived or repealed rights enjoyed and to be enjoyed under the former act, which it does not directly essay to do. In such circumstances, as my study convinces, section 4, chapter 159, '35 C.S.A. (L. '91, p. 366, §1, R.S. '08, §6298, C.L. '21, §6519), controls. It reads: "The repeal, revision, amendment or consolidation of any statute or part of a statute or section or part of a section of any statute, shall not have the effect to release, extinguish, alter, modify or change in whole or in part any penalty, forfeiture or liability, either civil or criminal, which shall have been incurred under such statute, unless the repealing, revising, amending or consolidating act shall expressly so provide; and such statute or part of a statute or section or part of a section of a statute so repealed, amended or revised, shall be treated, and held as still remaining in force for the purpose of sustaining any and all proper actions, suits, proceedings and prosecutions, as well civil as criminal for the enforcement of such penalty, forfeiture or liability, as well as for the purpose of sustaining any judg-

ment, decree or order which can or may be rendered, entered or made in such actions, suits, proceedings or prosecutions imposing, inflicting or declaring such penalty, forfeiture or liability." See *Day, Adm'r v. Madden*, 9 Colo. App. 464 (48 Pac. 1053), where that court, in a learned and exhaustive opinion answers every contention made by the movants here. "The legislature, in passing the repealing statute without a saving clause," said the court there, "had in view the terms, scope, and legal effect of a statute evidently passed to provide for just such contingencies. That act [section 4, supra], is in general terms; it aims at no specific statute; it is intended to embrace all statutes, both civil and criminal, and was evidently intended by the legislature to cover cases of this description, which, without intending to be offensively critical, we may justly say not infrequently happen. The statute [still referring to section 4] is broad in its scope, ample in its terms, and without giving undue force to its language, and without the adoption of a strained construction, may be taken to be a part and parcel of this repealing or amended statute. If this is so, then the statute was amended and reenacted with this provision attached, and we must read that section * * * as though it contained a provision that it should not be taken to extend to or effect any suits or proceedings already begun."

On the theory that a constitutional question was involved in the Day case, error was prosecuted to the supreme court; but, determining that no such question was presented, we dismissed the writ. In the course of our discussion, however, we did analyze the holding of the Court of Appeals, saying: "The repealing act containing no provision to the contrary, the general saving clause statute (Session Laws, 1891, p. 366; 3 Mills' Ann. Stats., sec. 418a)—whose object is to protect prior rights and remedies—is to be read into it, * * *." *Madden v. Day, Adm'r,* 24 Colo. 418, 51 Pac. 165. See, also, *Cavanaugh v. Patterson,* 41 Colo. 158, 91 Pac. 1117. I think

*Perry v. Denver,* 27 Colo. 93 (59 Pac. 747), cited in the court opinion, is obviously distinguishable.

I submit that the court should have addressed itself to the merits of the writ of error, rather than to what, regarded most favorably, I think is a doubtful expedient. It is clear that the legislative branch of the government purposed to repeal a statute which labor regarded as a continuing measure of protection in an active field of state endeavor. But did it purpose to thwart rights which, in a particular instance, and existing prior to the enactment of the repealing statute, labor representatives had caused to be established by judicial decree? I do not so conclude. Otherwise, and proceeding in the light of the 1891 statute, which we are not to assume was overlooked by the legislature, such purpose would have been adequately stated in the enactment. What was not done directly by those responsible for the legislation, and possessing constitutional power to that end, I think the judicial department should not supply by implication; and I decline to join therein.