WEST INDIA OIL COMPANY (P. R.), demandante y apelada, *v.* RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, demandado y apelante.

Núm. 9288.—*Sometido:* Abril 3, 1946. *Resuelto:* Mayo 20, 1946.

*Hon. Procurador General E. Campos del Toro y Carlos Santana Becerra, Subprocurador General Auxiliar,* abogados del apelante; *José Carbia Miranda y Juan Orlando Herrero,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Durante los años 1936, 1937 y 1938, la West India Oil Company (P. R.) celebró contratos con el Gobierno de Puerto Rico para vender a éste ciertas cantidades de gasolina, aceite, kerosina y otros productos de petróleo. Con anterioridad a la celebración de dichos contratos, la Compañía pagó los arbitrios de rentas internas sobre los productos vendidos y entregados al Gobierno, habiéndose verificado el pago al ser introducidos los productos en Puerto Rico. En marzo 16, 1943, el Tesorero de Puerto Rico notificó a la Compañía que adeudaba al Gobierno la suma de $664.32 por concepto de un arbitrio de 1 por ciento sobre el montante de ciertos contratos, de acuerdo con el inciso 5 de la sección 16 bajo el título "Otros Arbitrios" de la Ley núm. 85 de 1925 (pág. 585); y de un arbitrio de 2 por ciento sobre otros de dichos contratos, de acuerdo con la misma Ley, según fué enmendada por la Ley núm. 2 de 31 de agosto de 1938 (Leyes de

1938 (2) pág. 3). El Tesorero impuso además multas administrativas por valor de $65, haciendo ascender el total de la reclamación a $729.32. La Compañía pagó bajo protesta y radicó la demanda ante la Corte de Distrito de San Juan, solicitando la devolución de la suma pagada bajo protesta, más intereses y gastos.

El fundamento de la demanda es que la imposición y cobro del arbitrio sobre los contratos para venta y suministro de gasolina, materiales y productos al Gobierno Insular, provisto por el inciso 5, ''Otros Arbitrios'', de la sección 16 de la Ley de Rentas Internas de Puerto Rico, en adición a los arbitrios anteriormente impuestos y cobrados por el Gobierno, de acuerdo con la misma Ley de Rentas Internas, por la venta, traspaso, uso, consumo o introducción en Puerto Rico de esos mismos materiales y productos, constituye una doble tributación (*double taxation*) no autorizada por el estatuto.

El caso fué sometido a la corte inferior mediante una estipulación suscrita en noviembre 12 de 1943. En noviembre 8 de 1945 la corte inferior dictó sentencia declarando con lugar la demanda y ordenando el reintegro de la suma reclamada, más intereses legales desde la fecha de radicación de la demanda y las costas. El Tesorero interpuso el presente recurso, alegando como único fundamento del mismo que la Corte de Distrito de San Juan en 8 de noviembre de 1945 no tenía jurisdicción ni facultad para dictar la sentencia apelada.

La cuestión jurisdiccional aquí planteada no lo fué ante la corte inferior. Debemos considerarla y resolverla antes de entrar a examinar el caso en sus méritos.

El procedimiento autorizando el cobro y devolución de contribuciones pagadas bajo protesta es en realidad una acción contra El Pueblo de Puerto Rico. Éste ha dado su consentimiento para ser demandado, disponiendo que la de-

manda deberá ser dirigida contra el Tesorero de Puerto Rico como parte demandada. *Méndez* v. *Buscaglia*, 64 D.P.R. 743.

La ley vigente en abril 15 de 1943, fecha en que fué radicada la demanda en este caso, era la Ley núm. 8 de 19 de abril de 1927 (Leyes de 1927, pág. 123), enmendada por la núm. 17, aprobada en 21 de noviembre de 1941, Sesión Extraordinaria (pág. 55). La sección 3 de dicha ley, según quedó enmendada, disponía que "El contribuyente que haya pagado el todo o parte de cualquier contribución bajo protesta . . . . podrá, dentro del plazo de treinta (30) días, a partir de la fecha del pago, presentar demanda jurada contra el Tesorero de Puerto Rico en la corte de distrito correspondiente para obtener la devolución de la cantidad protestada;".

No cabe duda—y el Tesorero así lo admite—que en la fecha en que se radicó la demanda la Corte de Distrito de San Juan tenía jurisdicción para conocer del caso. *Serrallés* v. *Sancho Bonet, Tesorero*, 53 D.P.R. 650.

En mayo 13 de 1941 la Legislatura aprobó la Ley núm. 172 para crear el Tribunal de Apelación de Contribuciones de Puerto Rico (Leyes de 1941, (1) pág. 1039). La sección 4 de dicha Ley, enmendada por la núm. 32 de 21 de noviembré de 1941, Sesión Extraordinaria (pág. 115), disponía que: "El Tribunal tendrá jurisdicción para revisar *la tasación y retasación de la propiedad* mueble e inmueble y conocerá de todas las reclamaciones que pudieran formularse ante él por personas interesadas, contra las resoluciones del Tesorero de Puerto Rico que afecten al impuesto y pago de *contribución sobre la propiedad, de la contribución sobre ingresos, y de la contribución sobre trasmisión de bienes por herencia*". (Bastardillas nuestras). Como se ve, la disposición estatutaria que acabamos de transcribir no afectó en modo alguno la jurisdicción especial conferida a las cortes de dis-

trito para conocer de casos sobre devolución de arbitrios de rentas internas pagados bajo protesta.

En mayo 15 de 1943, la Legislatura aprobó la Ley núm. 169 (pág. 601) para enmendar la Ley núm. 172 de mayo 13 de 1941, por la cual se creó el Tribunal de Apelación de Contribuciones de Puerto Rico. Por virtud de la nueva ley se creó el Tribunal de Contribuciones de Puerto Rico y se dispuso:

"Sección 4.—El Tribunal de Contribuciones tendrá jurisdicción, *de carácter exclusivo*, para conocer de todos los casos sobre revisión de la tasación o retasación de la propiedad . . . y de todas las acciones . . . y reclamaciones de cualquier índole, relacionadas con, o que afecten la imposición, cobro, pago, *devolución o reembolso* de toda clase de contribuciones, *incluyendo arbitrios*, contribución sobre ingresos, impuesto de la victoria, sobre herencia, licencias, y cualesquiera otras contribuciones o impuestos, así como para conocer de las reclamaciones de contribuciones pagadas indebidamente o en exceso o cobradas ilegalmente, cuyo reembolso se haya rehusado por el Tesorero". . . . (Bastardillas nuestras).

El nuevo estatuto empezó a regir el día 14 de agosto de 1943, dos meses y medio después de radicada la contestación del Tesorero.

La sección 3 de la citada Ley 169 de 1943 dispone que toda ley, resolución, o parte de las mismas que estuvieren en conflicto con dicha ley quedarán derogadas por ésta.

La contención del Tesorero apelante es que desde el momento en que comenzó a regir la Ley núm. 169 de 1943, la cual no contiene ninguna "cláusula de reserva" en cuanto a casos pendientes, la Corte de Distrito de San Juan perdió la jurisdicción especial exclusiva que para poder conocer de este pleito le había sido conferida por la Ley núm. 17 de 21 de noviembre de 1941, enmendatoria de la núm. 8 de 1927.

La Compañía demandante sostiene en contrario, que habiendo radicado su demanda cuando la corte de distrito tenía jurisdicción para conocer del caso, la demandante ad-

quirió el derecho (vested right) al remedio que le concedía el estatuto para reclamar ante la Corte de Distrito la devolución de la suma pagada bajo protesta; que la jurisdicción de la corte de distrito no ha podido ser afectada por la Ley núm. 169 de 1943 en cuanto a los casos ante ella pendientes al ser aprobada dicha Ley, toda vez que ésta no deroga expresamente el estatuto que confería jurisdicción a las cortes de distrito; y por último, que las derogaciones implícitas no deben ser favorecidas por los tribunales.

El remedio concedido por la Legislatura al contribuyente para reclamar la devolución de contribuciones pagadas bajo protesta, puede ser alterado o modificado o enteramente suprimido a voluntad del legislador. *Brainard, Collector* v. *Hubbard*, 12 Wall. (79 U. S.) pág. 1, 14, 20 L. Ed. 272; *The Assessor* v. *Osborne*, 9 Wall. (76 U. S.) 567, 19 L. Ed. 748.

La regla general establecida por la jurisprudencia federal que hemos examinado es que ''cuando una ley de la Legislatura es derogada, debe ser considerada, excepto en cuanto a transacciones pasadas y cerradas, como si nunca hubiese existido'' y que las cortes carecen de jurisdicción para dictar sentencia en un pleito después de la derogación de la ley bajo la cual fué iniciado y tramitado, cuando la ley derogatoria no contiene una cláusula reservando la jurisdicción sobre los casos pendientes.(1)

En *Smallwood* v. *Gallardo*, 275 U. S. 56, la acción fué iniciada en la Corte de Distrito de los Estados Unidos para impedir mediante *injunction* el cobro de contribuciones. La sentencia denegando el injunction fué confirmada por la

---

(1)*Ex Parte McCardle*, 7 Wall. (74 U.S.) 506, 511; *Railroad Co.* v. *Grant*, 98 U. S. 398; *In Re Hall*, 167 U. S. 38; *Birdseye* v. *Shaeffer et al.*, 37 Fed. 821; *Fairchild* v. *United States*, 91 Fed. 297; *Bird* v. *United States*, 187 U. S. 118, 120; *Parr* v. *Colfax*, 197 Fed. 302; *Hallowell* v. *Commons*, 239 U. S. 506; *Western Union Telegraph Co.* v. *Louisville & Nashville Railroad Co.*, 258 U. S. 13; *Kline* v. *Burke Construction Co.*, 260 U. S. 226; *U. S.* v. *Chambers*, 291 U. S. 217, 223; *Van Horne* v. *Hines*, 122 F. 2d 207, *certiorari denied* 86 L. ed. 552.

Corte de Circuito y el caso elevado a la Corte Suprema Federal en procedimiento de Certiorari. En marzo 4, 1927, después de dictada la sentencia de la Corte de Circuito, el Congreso enmendó la sección 48 de la Ley Orgánica de Puerto Rico para disponer: "No podrá sostenerse en la Corte de Distrito de los Estados Unidos para Puerto Rico pleito alguno con el fin de restringir la tasación o cobro de contribución alguna impuesta por las leyes de Puerto Rico".

La cuestión debatida ante la Corte Suprema fué la de si el caso se había convertido en académico por virtud de la enmienda a la Carta Orgánica. De la opinión de la Corte Suprema, emitida por el Juez Holmes, copiamos lo siguiente:

"Aplicar el estatuto a los casos presentes no es darle efecto retroactivo y sí aceptarlo literalmente y efectuar la política envuelta en el mismo de proteger a la Isla impidiendo la paralización del cobro de sus contribuciones mediante injunction; una política no menos aplicable a estos pleitos que a aquellos comenzados en fecha posterior, y una política general de nuestro derecho. Rev. Stat. Sección 3224. Así interpretado, el estatuto interfiere tan poco con los derechos existentes de los peticionarios como con los de futuros litigantes. No existe ningún derecho adquirido a un injunction contra el cobro ilegal de contribuciones y la radicación de estas demandas no creó ese derecho. *Hallowell* v. *Commons*, 239 U. S. 506, 509. Este estatuto no es igual a una disposición de que no se iniciará una acción sobre un contrato anteriormente válido, que en substancia anularía un derecho adquirido (vested right) si se aplicase a contratos entonces en vigor. Ni siquiera trata de hacer válidas contribuciones que antes eran ilegales. Simplemente hace claro que estos casos no están exceptuados de la bien conocida regla general contra los injunctions. *No deja al contribuyente sin poder para resistir una contribución ilegal*, sean cuales fueren las dificultades en el procedimiento para su resistencia.

\* \* \* \* \* \* \*

"Desde luego, no importa que estos casos hayan sido elevados a una corte más alta. Cuando se corta la raíz, las ramas caen. Habiendo sido desestimadas las demandas por sus méritos, las sentencias deben ser revocadas y los casos devueltos con instrucciones para que sean desestimados por falta de jurisdicción." (Bastardillas nuestras).

Son numerosas las decisiones de los diversos estados de la Unión en las cuales se ha aplicado la regla de que "Cuando un estatuto del cual una corte deriva su jurisdicción en determinados casos es derogado, la corte no puede proceder bajo el estatuto derogado, aun en los pleitos pendientes en la fecha de la derogación, a menos que los mismos sean exceptuados por una cláusula en la ley derogatoria".(²)

La demandante apelada ha citado jurisprudencia de esta Corte Suprema en la que se sostiene que las revocaciones implícitas no son favorecidas por la ley; (³) y decisiones federales y del estado de California(⁴) en los cuales se sostiene que ningún estatuto, por muy positivos que sean sus términos, debe ser interpretado en el sentido de interferir con contratos existentes, derechos de acción, o derechos adquiridos, a menos que la intención de que ése deberá ser su efecto sea expresamente declarada; y que de acuerdo con esa regla, "Aun cuando las palabras en un estatuto sean bastante amplias en su extensión literal para comprender los casos pendientes, todavía deben ser interpretados como aplicables solamente a casos que puedan presentarse en el futuro, a menos que el lenguaje usado exprese una intención contraria en términos inequívocos".

Los hechos en el caso de *Duke Power Co.* v. *South Carolina Tax Commission,* 81 F.2d 513, citado por la apelada, son casi idénticos a los del presente caso. Veamos.

La Duke Power Co. radicó una demanda para recobrar contribuciones pagadas bajo protesta de acuerdo con la ley

---

(²)*Hunt* v. *Jennings,* 5 Blackford 195, 33 Am. Dec. 465; *Zintsmaster* v. *Aikin,* 90 N. E. 82; *Schoepflin* v. *Calkins,* 25 N. Y. S. 696; *McClain* v. *Williams,* 73 N. W. 72; *Texas Mexican Ry. Co.* v. *Jarvis,* 15 S. W. 1089; *Terry* v. *McClung,* 52 S. E. 355; *Vail* v. *Denver,* 115 P. 2d 389; *Lemon* v. *Los Angeles Terminal Ry. Co.,* 102 P.2d 387; *Ex Parte Cavitt,* 118 P.2d 846; *People* v. *Lindheimer, Collector,* 21 N.E. 2d 318.

(³)*Guerra* v. *Hernández Mena,* 37 D.P.R. 102; *Cortés et al* v. *Crehore et al,* 24 D.P.R. 430; *Pueblo* v. *Garzot, Jr.,* 24 D.P.R. 231; *Portela* v. *Registrador,* 22 D.P.R. 86; *Pueblo* v. *Concepción,* 21 D.P.R. 311.

(⁴)*Twenty Per Cent Cases,* 87 U. S. 179, 22 L. ed. 339; *Berg* v. *Traeger,* 210 Cal. 323; *Hopkins* v. *Anderson,* 218 Cal. 62.

del Estado de South Carolina titulada "Power Tax Act".
Después de dictada la decisión de la corte inferior decla-
rando con lugar la excepción previa, aquella parte de la ley
que autorizaba el pago de contribuciones bajo protesta y la
acción para reclamar su devolución fué derogada por la Le-
gislatura de South Carolina. El Procurador General soli-
citó la desestimación de la apelación ante la Corte de Cir-
cuito de Apelaciones para el Cuarto Circuito, alegando que
el consentimiento del Estado para ser demandado había sido
retirado por la ley derogatoria y que la Corte carecía de
jurisdicción para continuar conociendo del caso.

La Ley de South Carolina prohibía la expedición de au-
tos de injunction para impedir el cobro de contribuciones,
pero disponía que el contribuyente que no estuviere conforme
podía hacer el pago bajo protesta y demandar para obtener
el reintegro de la suma pagada. La nueva ley de 1935 de-
rogó la disposición de la ley anterior que prohibía el injunc-
tion y autorizaba el pago bajo protesta. La Corte de Cir-
cuito resolvió que la Compañía demandante tenía derecho a
continuar la tramitación del pleito incoado bajo la ley ante-
rior, expresándose así:

"La regla general es, desde luego, que la derogación de un esta-
tuto tiene el efecto de borrarlo tan completamente como si nunca
hubiese existido y de poner fin a todos los procedimientos instituídos
bajo el mismo. 59 C. J. 1189, 1190, y casos allí citados. Pero está
igualmente establecido que una ley derogatoria no debe ser interpre-
tada, si otra interpretación es posible, como aprobada con la inten-
ción de afectar derechos que han sido adquiridos bajo la ley dero-
gada o para requerir la desestimación de acciones instituídas para
hacer valer tales derechos. (Citas).

"*         *         *         *         *         *         *

"No puede haber duda en cuanto a que la apelante tenía un de-
recho adquirido (vested right) con respecto a las cantidades de di-
nero pagadas bajo protesta de acuerdo con las disposiciones del
estatuto. El estado recibió y conservó esas cantidades sujetas al
cumplimiento de su deber de devolverlas, si la corte resolviese que
no habían sido debidamente cobradas; y, en el caso que así se re-

solviese, a las reclamaciones para la devolución de los fondos se les daba preferencia sobre otras reclamaciones contra el Tesoro del estado. Era algo así como si el dinero estuviese en depósito con las autoridades del estado para aguardar la determinación del pleito instituído para su reintegro. La derogación del estatuto que autorizaba el pago bajo tales condiciones y la demanda para recobrar las cantidades así pagadas, no debe ser interpretada, de acuerdo con las autoridades arriba citadas, para destruir derechos con respecto a pagos ya hechos bajo tal estatuto, ni para desestimar pleitos instituídos para recobrar el dinero, sino en el sentido de aplicar el estatuto prospectivamente, si tal interpretación es razonablemente posible, como creemos que lo es. Y que la intención de la legislatura fué que la ley derogatoria debería ser interpretada para aplicarse prospectivamente, sin afectar derechos adquiridos y acciones comenzadas bajo el estatuto derogado, se desprende del hecho de que la sección del estatuto derogado incluye una prohibición contra las concesiones de injunctions para impedir el cobro de contribuciones, así como la disposición que permite el pago bajo protesta y la demanda sobre reintegro. La intención de la ley derogatoria fué evidentemente restablecer el derecho al remedio de injunction para el futuro, y para el futuro retirar el derecho al pago con demanda para recobrar lo pagado.

"Esta interpretación del estatuto es necesaria si la violación por la legislatura de los más elementales principios de razón y justicia ha de ser evitada. La Ley de 1931 había suprimido el derecho a impedir mediante injunction el cobro de contribuciones consideradas como ilegales o injustas y en lugar de ese derecho había concedido, como un remedio legal adecuado, el derecho a pagar bajo protesta y a demandar para recobrar lo pagado. La supresión del derecho del contribuyente a continuar con su pleito, después de haber sido privado del derecho a proceder en equidad bajo la promesa del estado de que él tendría ese derecho, y después que el estado ha cobrado las contribuciones en controversia por virtud de tal promesa, sería tan irrazonable e injusta, que no deberíamos ni siquiera presumir que un cuerpo público, honorable como la legislatura del estado, haya tenido la intención de que sus leyes pueden tener tal efecto. Como dijo la Corte Suprema en *U. S. v. Kirby*, 7 Wall. 482, 19 L. ed. 278, y citado con aprobación en *Sorrells v. United States*, 287 U. S. 435, 77 L. ed. 413:

'Todas las leyes deben ser interpretadas razonablemente. Los términos generales deben ser limitados en su aplicación de manera que no conduzcan a la injusticia, la opresión o a una consecuencia

absurda. Se presumirá siempre, por lo tanto, que la legislatura tuvo en mente excepciones a su lenguaje, para evitar resultados de esa naturaleza. La razón de la ley en tales casos debe prevalecer sobre su letra.'

"Ciertamente la interpretación razonable de la ley derogatoria que estamos considerando es que fué aprobada con la intención de que se aplicase prospectivamente y no a casos en que se han adquirido derechos con respecto a pagos hechos bajo el estatuto derogado.

"    "    *    *    *    .    *    *    ,    *    *

"El estado puede, desde luego, retirar en cualquier momento su consentimiento para ser demandado; y el derecho a retirarlo no está afectado por la cláusula de contratos de la Constitución (Artículo 1, párr. 10), o por las limitaciones de la Enmienda 14. (Citas.) Pero la ley derogatoria en este caso, si fuera interpretada como pretende la parte apelada, haría más que retirar el consentimiento del estado para ser demandado. Eliminaría por completo todos los derechos de los apelantes con respecto a las sumas pagadas bajo protesta; porque nadie pretendería, en ausencia de un estatuto, que un contribuyente tendría derecho alguno con respecto a contribuciones ya pagadas. Y no habiendo ninguna disposición separada en el estatuto derogatorio que trate del remedio, el estatuto entero tendría que ser declarado inválido en cuanto a su aplicación a transacciones ocurridas con anterioridad a su aprobación. La cuestión en cuanto a este particular ha sido claramente resuelta por la reciente decisión de la Corte Suprema en *Lynch* v. *U. S.*, supra, 292 U. S. 571. 78 L. ed., 1434. Un estatuto que trata por la misma disposición de destruir al mismo tiempo un derecho y un remedio, no consigue destruir ni lo uno ni lo otro.

"Y, si el estatuto tratase meramente de abolir el remedio de la acción contra el estado, ello levantaría una grave cuestión constitucional bajo las circunstancias del presente caso. La acción contra el estado fué concedida, en lugar de un procedimiento de injunction, como medio para dar al contribuyente un debido procedimiento de ley. Si el estado, después de obviar un procedimiento de injunction contra sus funcionarios, por haber consentido ser demandado, pudiera retirar ese consentimiento sin negar al contribuyente el debido proceso en violación de la Enmienda Catorce, es una grave cuestión que no creemos necesario decidir en este caso."

Llevado el caso ante la Corte Suprema Federal en solicitud de un auto de certiorari, éste fué denegado. Véase: 298 U. S. 669, 80 L. ed. 1392.

Es imposible distinguir el caso de *Duke Power Co.*, supra, del de autos.

La Legislatura Insular, por Ley de marzo 8 de 1906, titulada "Ley para definir los *injunctions* y para determinar cuándo pueden librarse, etc.", dispuso:

"No podrá otorgarse un injuntion:

"* * * * * * *

"7. Para impedir la imposición o cobro de cualquier contribución establecida por las leyes de los Estados Unidos o de Puerto Rico."

(Art. 4 de la Ley y 678 del Código de Enjuiciamiento Civil, Ed. 1933).

En marzo 9 de 1911 (pág. 132) la Legislatura aprobó la ley disponiendo el pago de contribuciones bajo protesta y estableciendo el procedimiento para exigir la devolución de las mismas mediante demanda contra el Tesorero de Puerto Rico ante una corte de jurisdicción competente. Dicha ley disponía que en el caso de que la sentencia fuese en favor del contribuyente, "el Tesorero procederá a su reintegro, dando preferencia a ese pago sobre cualquier otra reclamación que se haya hecho al Tesorero". La ley disponía, además, que no se daría ningún otro recurso en casos de recaudación ilegal de contribuciones o rentas; y que en ningún caso se expidiría auto alguno para impedir la recaudación de contribuciones o rentas devengadas, siendo el pago bajo protesta y la demanda ante los tribunales el único recurso que podía utilizar el contribuyente. La Legislatura abolió el remedio de equidad, el injunction, pero tuvo el cuidado de conceder al contribuyente un remedio legal adecuado, como lo es el del pago bajo protesta y la reclamación judicial, evitando así que el contribuyente pudiera alegar que se le había privado de su propiedad sin un debido proceso de ley.

La Legislatura ha mantenido en vigor hasta el presente la prohibición del uso del injunction para impedir el cobro de contribuciones o arbitrios ilegalmente impuestos. Y hasta

agosto 14 de 1943, fecha en que comenzó a regir la Ley núm. 169 de 1943, mantuvo en todo su vigor la jurisdicción de las cortes de distrito para conocer de las demandas interpuestas para obtener la devolución de arbitrios pagados bajo protesta. Fué bajo el amparo de esa Ley (núm. 8 de 19 de abril de 1927, enmendada por la núm. 17 de 1941) que la West India Oil Co., P. R., acudió ante la Corte de Distrito de San Juan, después de haber pagado al Tesoro de Puerto Rico la suma que ahora reclama.

Es cierto que la Ley núm. 169 de 1943 por su sección 4 confiere jurisdicción exclusiva al Tribunal de Contribuciones para conocer de todas las acciones relacionadas con la devolución o reembolso de toda clase de arbitrios; y que dicha ley no contiene cláusula alguna por la cual se reserve a las cortes de distrito la jurisdicción sobre casos ante ellas pendientes, incoados de acuerdo con la ley anterior. Pero también es cierto que la nueva Ley no contiene disposición alguna, expresa o implícita, para privar a las cortes de distrito de jurisdicción sobre los casos ante ellas pendientes, ni para transferir la jurisdicción al Tribunal de Contribuciones. Tampoco se provee en la nueva ley otro remedio legal adecuado para que los demandantes en los casos pendientes puedan obtener una adjudicación de su derecho a la devolución de la suma pagada bajo protesta.

Nos encontramos, pues, ante una situación tan desfavorable para el contribuyente como la del caso de *Duke Power Company*.

La interpretación de la Ley núm. 169 de 1943 sugerida por el Tesorero apelante no sería ni justa ni razonable. Si la aceptáramos, estaríamos privando a la corporación demandante de un derecho adquirido al amparo de la ley vigente en la fecha en que se hizo el pago bajo protesta, basado en la promesa del Gobierno de que en el caso de que la sentencia fuere en su contra devolvería la suma pagada bajo pro-

testa más intereses a razón del 6 por ciento anual desde la fecha de radicación de la demanda.

Siendo dicha Ley susceptible de una interpretación justa y razonable, "debemos presumir, por respeto al legislador, que el estatuto no fué aprobado para ser aplicado retroactivamente y si tomamos en consideración el sentir general de la humanidad en cuanto al tema de las leyes retroactivas, tendremos la mejor razón para concluir que la legislatura no tuvo la intención en este caso de establecer un precedente tan pernicioso". Véase: *Dash* v. *Van Kleeck*, 7 Johns. (N. Y.) 477, 5 Am. Dec. 291.

Opinamos que la única interpretación justa y razonable que puede darse al estatuto es que la intención del legislador fué que la sección 4 del mismo, supra, se aplicara prospectivamente o sea a casos originados con posterioridad a la fecha en que el estatuto comenzó a regir; y que las cortes de distrito conservaran su jurisdicción para conocer de y decidir los casos de reclamaciones de arbitrios pagados bajo protesta, que ante ellas estuvieron pendientes al entrar en vigor la nueva ley.

La Corte de Distrito de San Juan actuó dentro de su jurisdicción al dictar la sentencia recurrida.

El Tesorero apelante no ha impugnado la sentencia dictada por la corte inferior sobre los méritos del caso. Dicha sentencia se ajusta a lo resuelto por este Tribunal en *West India Oil. Co.* v. *Domenech, Tesorero*, 49 D.P.R. 801, *John B. Harris, Inc.* v. *Sancho Bonet, Tesorero*, 49 D.P.R. 969 y *Casal* v. *Sancho Bonet, Tesorero*, 53 D.P.R. 407.

*La sentencia recurrida será confirmada.*